Allen Strathern et al. *v.* James Gilmore, William Sias, Samuel C. Wilkinson, John Telford, Alexander Cunningham, Sr., and Gardner McAllister, School Directors, composing the Board of School Directors of the School District in the Township of Wilkins, in the County of Allegheny, State of Pennsylvania, and James W. Johnston, Appellants.

*School law—Recording vote of school directors—Act of April* 11, 1862.

The provision of section 4 of the Act of April 11, 1862, P. L. 471, that in the levying of taxes, purchase and sale of real estate, the location or change of location of schoolhouses and the appointment and dismissal of teachers "the names of the members voting both in the affirmative and negative shall be so entered on the minutes of the board by the secretary," is more than merely directory.

*School law—Recording votes of directors—Sale of property—Advertisement —Equity—Injunction.*

A school board will be enjoined from selling school property where it appears that the names of the members of the board voting both for and against the sale were not recorded on the minutes, and that the contract made by the board, both as to the amount of the land sold and as to the terms of payment, materially differed from the advertisement of the sale published by the board.

*Equity—Costs—School law—Discretion of directors.*

Where a school board is enjoined from selling school property, on the ground that the vote both in favor of and against the sale was not recorded, and because there was a material variance between the advertisement of the sale and the contract, the costs will not be imposed upon the directors, but upon the school district, if it appears that there was no gross abuse of discretion, nor any fraud or collusion, on their part.

Argued Nov. 5, 1897. Appeal, No. 10, Oct. T., 1897, by defendants, from decree of C. P. No. 1, Allegheny Co., June T., 1896, No. 545, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

COLLIER, J., found the facts to be as follows:

This is a bill by Allen Strathern and 146 other taxpayers of

the school district of Wilkins township, asking an injunction, restraining the school directors of said township from executing and delivering to James W. Johnston a deed for school property of said school district.

From the evidence we find the following facts:

1. That the school board of Wilkins township, at a regular meeting, on October 26, 1895, all the members being present, except one, received a petition from divers inhabitants of Wilkins township, as follows:

"To the honorable members of Wilkins township school board:

"The petition of divers inhabitants of Wilkins township, aforesaid, respectfully showeth: that your petitioners labor under inconvenience for want of a road to connect Larimer avenue in Wilkins township, aforesaid, with Larimer avenue in the borough of Turtle Creek, Pa., and that by reason of said street not being connected it is very inconvenient for your petitioners to reach the post office, churches and railroads. It is also an impediment in the way of laying water-mains, etc. Your petitioners therefore pray your honorable body to take such action in the matter as will bring about the connection of said Larimer avenue as above set forth, and they will ever pray," etc.

Whereupon the minutes state that "Mr. Cunningham and Wilkinson reported that the citizens of Wilkins township known as Melontown, desired to have the schoolhouse removed so that street could be opened up, on motion by Wilkinson and seconded by Cunningham and carried that the secretary advertise the school property for sale."

2. That in accordance with this action of the school board the following advertisement was inserted for three weeks in the Pittsburg Times and Pittsburg Chronicle Telegraph:

"For Sale.—The board of directors of the school district of the township of Wilkins, Allegheny county, Pa., offer for sale the public school property of said school district at Turtle Creek (adjoining the northerly boundary line of the borough of Turtle Creek) comprising a lot having an area of 1 acre and 11.94 perches, on which is erected a two-story brick schoolhouse, containing seven rooms. Terms: One half cash, the balance in two equal annual instalments, with interest, payable semi-

annually, to be secured by bond and mortgage, with 30 days
sci. fa. clause.    Sealed bids for the above will be received till
November 22, 1895.    The right is reserved to reject any or all
bids.    Address Samuel C. Wilkinson, Secretary, Turtle Creek,
Pa."

On November 23, 1895, the school board met, and two of the
members not being present, the following appears on the min-
utes: " the disposing of the school property was brought before
the meeting and not being a full board, on motion by Telford
and seconded by McAllister and carried that a special meeting
be called on Saturday evening November 30, at 7 o'clock, P. M.,
for the purpose of selling or moving the building."

3.  That at the special meeting held on November 30, 1895,
the following is the minute, viz:

" Turtle Creek, November 30, 1895, Wilkins township school
board met in special meeting on the above date, Mr. Gilmore in
the chair, members present Cunningham, Sias, Telford, Mc-
Allister, Gilmore, Wilkinson, the secretary reported that the
meeting was called for the purpose of disposing of the school
property, the property has been advertised for three weeks in
the Pittsburg Times and Chronicle Telegraph and has just re-
ceived one bid from J. W. Johnston for $5,280 providing the
property has a frontage of 165 feet front, if not $32.00 per
front feet whatever there is; on motion by Cunningham and
seconded by Wilkinson and unanimously carried that the bid
of J. W. Johnston be accepted for the property; on motion by
McAllister and seconded by Cunningham and carried that the
secretary be instructed to get the article of agreement drawn
up and to reserve the right-a-way of a street through the school
property and all seats, black boards, bell and all other things in
the building belongs to the school; nothing further being of-
fered on motion adjourned.

" S. C.  WILKINSON, Sec."

We find that the motion to sell the property to J. W. John-
ston at his bid was not carried unanimously, but on the contrary
that Mr. Gilmore voted " no " and that Mr. Telford refused to
vote, and that shortly after the vote was taken Mr. Gilmore
insisted that he had voted " no " and demanded that each mem-
ber's name should be recorded by the secretary as he had voted
or had not voted, which was refused to be done.

At a subsequent meeting of the board held on December 21, 1895, all the members being present except Mr. Sias, the minutes of the previous meeting and of the special meeting were approved as read, (but without naming each member and how he voted), and the article of agreement between Johnston and the school directors was presented and read to the board ; the same was accepted and the president and secretary were instructed to sign the. agreement, in pursuance of which the agreement between Johnston and the school district was executed, in duplicate, by James W. Johnston and by James Gilmore and S. C. Wilkinson, together with the seal of the school district, said agreement containing the following clauses, viz :

" The total purchase money to be paid by the said party of the second part to be ascertained by multiplying the width in feet of said lot as measured along the centre line of the extension of Larimer avenue in the borough of Turtle Creek, by thirty-two, the product so obtained to be the sum of the consideration money expressed in dollars ; that is to say, the party of the second part is to pay at the rate of thirty-two dollars per foot, average width of said property as measured by the line aforesaid.

" It is stipulated that the party of the first part is to retain the said property for school purposes until the end of the present school term. The party of the second part to have the right in the mean time to enter upon said lot for the purpose of surveying and plotting the same.

" It is further stipulated as a condition hereof that the party of the second part, his heirs and assigns, shall remove or cause to be removed, the school house now standing upon the said lot from the line of the extension of Larimer avenue aforesaid, so as to connect with the corresponding street or avenue in Mellon's plan northwardly of said school property ; said school house to be removed and street opened across said school lot not later than the first day of August next, (1896) ; and the said party of the second part hereby agrees to purchase the aforesaid school lot subject to the stipulations and conditions aforesaid and to pay therefor the price to be ascertained as above specified in manner following, to wit: One hundred dollars of said purchase money at the execution hereof, and the remainder of one half of the total purchase money on the fifteenth day of

May, A. D., 1896, and the balance of the purchase money, (that is, the remaining half of the whole) in three equal annual installments from the date last mentioned with lawful interest thereon, payable semi-annually from said last mentioned date; to be secured by a bond and a mortgage of the premises aforesaid, said mortgage to have a 90 days' sci. fa. clause. . . . .

"The deed of conveyance for said property to be delivered on the payment of the half of the total purchase money aforesaid and the removal of the school house and opening of the street hereinbefore stipulated and the receipt by the party of the first part of the bond and mortgage aforesaid."

On the execution of this agreement Johnston paid the $100 hand money, which was accepted and has been used by the board for school purposes, and entered upon the property, had the same surveyed and plotted, and had sign boards erected on it, "Lots for Sale," and that the school term ended on April 29, 1896, and this bill was filed on the next day, and injunction applied for on May 1, 1896.

4. We find from the evidence that the Pittsburg Times and Chronicle Telegraph had as large if not a larger circulation in the neighborhood of the school property than any other papers, and larger than any of the local papers, in which no advertisement was placed, nor was any handbills or posters placed upon the building or in the neighborhood advertising the sale.

We also find that there was no gross abuse of discretion on the part of the school directors, nor any fraud or collusion on their part or on the part of Mr. Johnston.

### CONCLUSIONS OF LAW.

Section 4, Act of April 11, 1862, P. L. 471, declares that "no tax for school or building purposes shall be levied, no resolution shall be adopted for the purchase or sale of any school real estate, no schoolhouse shall be located, or its location abandoned or changed, no teacher shall be appointed or dismissed . . . . except by the affirmative votes of a majority of the whole number of directors or controllers thereof; and in each of said cases, the names of the members voting both in the affirmative and negative shall be so entered on the minutes of the board by the secretary," etc.

This section of this act has several times been passed upon

by the Supreme Court in the case of teachers. In school district of Dennison Township v. Padden, 89 Pa. 397, Justice GORDON, delivering the opinion of the Supreme Court, says:

"By the act of April 11, 1862, teachers can only be selected by the school board, and so specific is this act upon the subject that it requires the names of the members voting both in the affirmative and negative to be recorded upon the minutes; this is the only manner in which teachers can be selected."

In Dyberry School District v. Mercer, 115 Pa. 559, Mr. Justice STERRETT, delivering the opinion of the Court, adhered to the principle recognized in Cascade School District v. Lewis School District, 43 Pa. 318, and the construction heretofore given to the act of April 11, 1862, in Dennison School District v. Padden, 89 Pa. 395 and other cases, and on page 564 says: "In the case last cited we held, for the reasons stated in the opinion of our Brother GORDON, that, in the selection of school teachers, the provisions of this act must be strictly complied with; and we are not disposed to recede from that position."

If this construction is given to the clause relating to teachers, much more should it be applied to the sale of the real estate of the taxpayers. In none of the meetings of the board of directors relating to the sale of the school property were the requirements of the act complied with. At the meeting of October 26, 1895, when the petition was presented to the board to remove the schoolhouse so that the street could be opened, the minutes show, "on motion by Wilkinson and seconded by Cunningham, and carried, that the secretary advertise the school property for sale." This is the first resolution that appears in the minutes for the sale of the property, and no attempt is made to comply with the act by recording the name of each director and how he voted. At the special meeting on November 30, 1895, when the bid of Johnston was accepted, he being the only bidder, the names of those voting in the affirmative and negative are not entered on the minutes, in face of the fact that Telford refused to vote, and that shortly after the vote was taken, Mr. Gilmore insisted that he had voted "No," and demanded that the secretary enter upon the minutes the name of each member and how he voted. And finally at the meeting of December 21, 1895, when the article of agreement was read to the board, the minutes say, "on motion by McAllister and seconded by Cunningham and

carried, that the article of agreement be accepted, and the president and secretary sign the agreement," no record of the names of those voting for or against the motion to show how the motion was carried, was entered on the minutes.

We are of the opinion that the act of assembly relating to resolutions for the sale of any school real estate, has not even been substantially, much less strictly, complied with, and that all the resolutions relating the sale of the school property are for that reason null and void.

Again, the advertisement as published in the papers offered a lot of 1 acre and 11.94 perches, on which was erected a two-story brick schoolhouse of seven rooms, and the terms were one half cash, and the balance in two equal annual instalments, to be secured by bond and mortgage with thirty days sci. fa. clause. The agreement the school board did make with Mr. Johnston was entirely different—it was to take down the schoolhouse and open a 40 ft. street so as to connect Larimer avenue, laid out in the Mellon plan, with Larimer avenue in the borough of Turtle creek, and to pay a price for the rest of the ground on a different basis than that advertised, with three annual payments and a ninety days sci. fa. clause. We are of opinion that the board of directors had no power to make such a contract, differing so entirely from the public advertisement. It was substantially a private contract. Nor do we think the board had power to contract to give away a portion of the school property for an avenue; its business was to sell the property as it stood.

With the views above expressed, we do not consider it necessary to discuss the question whether receiving sealed bids for the sale of school real estate is the proper way. It is certainly liable to great abuse, while a public sale on the premises would seem the preferable and the fairest way.

The court decreed:

1. That the agreement entered into between the school district of the township of Wilkins, and James W. Johnston, bearing date December 9, A. D., 1895, is null and void.

2. That Samuel C. Wilkinson, William Sias, Alexander Cunningham, Sr., and Gardner McAllister, school directors of the school district of the township of Wilkins, be, and they are hereby perpetually enjoined and restrained from executing and delivering to James W. Johnston or to any other person, for or on

his behalf or upon his order a deed or deeds for the whole or any part of the school real estate described and set forth in the bill filed in this case and in said agreement above referred to, and from delivering to said James W. Johnston or to any other person, for or on his behalf, or upon his order, possession of said described school real estate.

3. That the said Samuel C. Wilkinson, William Sias, Alexander Cunningham, Sr., and Gardner McAllister, school directors of the school district of the township of Wilkins, their agents, officers and employees, and the said James W. Johnston, his agents and employees, be, and they are hereby perpetually enjoined and restrained from tearing down, mutilating, destroying, or in any manner damaging said school building, outhouses, fences, pump, and fixtures thereunto belonging, and from removing from said school building any desks, chairs, fixtures and school apparatus whatsoever.

4. That all costs of this proceeding be paid by Samuel C. Wilkinson, William Sias, Alexander Cunningham, Sr., Gardner McAllister and James W. Johnston.

*Error assigned* was decree of the court, quoting it.

*S. Schoyer, Jr.*, with him *R. E. Stewart*, for appellants.—The provision as to recording the votes is directory only; the power of sale is vested in the board.

Entries in the minutes made by the officers of corporations are presumed to be true. The presumption omnia rite acta applies in support of the regularity of corporate meetings: Beach on Private Corporations, sec. 295.

The learned court did not find that the board was prejudiced by the variances, or that other bidders were deterred. There was only one bidder and one bid, and that was Johnston and his bid. Nobody was injured. The advertisement had done its work. Johnston was the only man who wanted the property. The details of the agreement were certainly within control of the board. A modification of the time of payment, bearing interest for the extended time, meant no loss to the board.

The court should have put the costs on the plaintiffs.

*E. J. Smail*, with him *D. F. Patterson*, for appellees, cited as to recording the vote: Tobin v. Morgan, 70 Pa. 229 ; Cascade

School District v. Lewis School District, 43 Pa. 318; Gilliford
v. School District, 165 Pa. 631; School District v. Padden,
89 Pa. 395; Dyberry School Dist. v. Mercer, 115 Pa. 559; White-
head v. School District, 145 Pa. 418; McCowin's App., 165 Pa.
233; Redman's App., 173 Pa. 59.

OPINION BY MR. JUSTICE FELL, January 3, 1898:

The vote of the members of the board of directors on the ques-
tion of the sale of the school property is found by the court not
to have been a unanimous vote, and there is no record of the
vote as it was cast.   The provision of the fourth section of the
Act of April 11, 1862, P. L. 471, that in the levying of taxes,
the purchase and sale of real estate, the location or change of
location of schoolhouses, and the appointment and dismissal of
teachers, " the names of the members voting both in the affirm-
ative and negative shall be so entered on the minutes of the
board by the secretary," has been held to be more than merely
directory.   The necessity of recording the vote in the manner
prescribed by the act was recognized in Tobin v. Morgan, 70 Pa.
229, in the levying of a tax, and in School Dist. v. Padden, 89 Pa.
395, and School Dist. v. Mercer, 115 Pa. 559, in the employ-
ment of teachers, and seems to have been directly affirmed in
the latter two cases.   In School Dist. v. Mercer, supra, it was
said by the present Chief Justice: " They are wise and wholesome
provisions, intended to correct gross abuses which had gradually
crept into the administration of our school system, and hence it
is not too much to insist upon a substantial compliance with the
spirit, if not the very letter, of the act."

The departures in the terms of the sale from the terms of the
advertisement were in themselves fatal to the whole proceeding.
These departures, both as to the amount of the land sold and as
to the terms of payment, were material, and the board was with-
out power to make them.   The approval of such action would
open the door to gross abuse of power.

The court found that there was no fraud or collusion, and
that all of the school directors acted in good faith.   They over-
looked the requirements of the statute and exceeded their power
in departing from the terms of the advertisement.   There was
no improper conduct on the part of the purchaser, James W.
Johnston, and there is no reason why he should be charged with

any part of the costs. He is of course entitled to recover back the $100 which he paid on account of the purchase money, but we can make no order to that effect. We think that all of the defendants should be released from the payment of the record costs, and that they should be placed on the school district of the township of Wilkins, and it is so ordered.

With this modification the decree is affirmed.