THE COURT..
The whole matter goes to the jury; we can make no order upon the plaintiff to prove a consideration; but if the jury áre led by the defendant’s evidence to doubt the consideration or suspect the fairness of the note, it will be a circumstance in his favor, and have its effect, unless the plaintiff rebut and do it away. The defence here closed.
The plaintiff -recalled Col. Bigger and Mr. Wright, who testified that although the defendant was reputed wealthy, he was somewhat embarrassed and straitened for money from 1820 to 1824.
*Aeontract, executed by the defendant, with several endorse- [296 ments on the back, with signatures of the defendant, was, by agreement of counsel, submitted to the jury for. them to compare the signatures. A bill of discovery which had been filed in chancery by the defendant to aid his defence, and the plaintiff’s answer thereto, were then offered in evidence by the plaintiff. They were objected to. by the defendant’s counsel, but admitted by the court. The substance of the answer is as follows: Respondent replies to the bill of discovery, that he was in possession of the note in issue from the day, or somewhere thereabouts, at which it is dated, until he remitted it to counsel for collection; that he has for a long time resided in the vicinity of New Brunswick, in the state of N. Jersey, and that some time in the autumn of 1821, Hagerman visited that section of country, and he, Murphy, was then in possession of anote given him by Samuel Smith, then of New York, for upon which *302 interest Lad run for two years; the consideration of said note was ■ship timber, an article in which respondent was trading; that Smith had become embarrassed and moved to the. western country, and located somewhere below Pittsburgh, on the Ohio river; that he, Murphy, inquired of Hagerman if he knew Smith, and what were his circumstances; he replied, that he knew him, and that he was in prosperous circumstances. He then proposed to purchase said note, and offered his own note for the principal, gaining thereby the interest upon $793 for two years, payable in nine months thereafter. This respondent did not accede to Hagerman’s proposition, who then started to the western country. He, Murphy, drew the body of the note in question, and immediately sent it to his agent, .Brown, to accede to the proposition made him by Hagerman; after sometime, Brown returned, bearing with him the note in issue, executed by Hagerman, for which he gave him the note on Smith in consideration. Murphy never saw Hagerman execute said note, but was informed he did by his said agent, Brown, who delivered the note now in issue to him.
J. Woods and T Corwin, for the plaintiff, and
P. Ross and A. H. Dunlevy, for the defendant, argued to the Pry.
WRIGHT, J. to the jury. This suit is brought to recover the amopnt of the note of hand that has been read to you in evidence, with the interest. The proof of the execution of the note was, in the first instance, addressed to the court, and when it was permitted to be read in evidence, it established in the plaintiff a prima facie right to recover; a right to recover that will control your 297.] *verdict, unless the defendant, by evidence, has satisfied you of facts which in law exonerate him from the payment. This case, like all other civil cases, is to be determined by the weight of evidence under all the attending circumstances, of which, as well as of the credit due to the witnesses, you are to judge. But you must judge on the testimony given you in court: you have no right to take into consideration any facts not detailed in evidence. The defence is presented to our consideration in three different aspects, on one or all of which it is urged the defendant is exonerated from the payment of the note: 1st. That the note read to you is not the same shown to the witnesses in N. Jersey, and sworn to by them. 2d. That it is a forgery. 3d. That it is without consideration, having been fraudulently obtained. I shall give you my views on each of these points:
*303 . 1st. As to the identity of the note. The witnesses refer to the note shown to them by date; it is proven by the attorney that this-note was sent with the notice to obtain the depositions, and by the clerk, that it was returned with the depositions within the same envelop; if these witnesses deserve credit, it is submitted to you whether it is probable there has been any deception practised in this business, by the substitution of another note for the one shown to the witnesses.
2d. As to the 'forgery. This part of the defence rests upon the evidence as to the execution of the note; there is no direct evidence of forgery, but the defendant claims that it may be fairly inferred, from the circums'tances of the case. You should take these circumstances all together, and judge of them fairly as reasonable men. As a general rule, crime is never to be presumed, and jurors should require clear proof of its existence before they relyupion it-to vitiate a contract. It is urged, that the weight of the evidence as to the execution of the note is with the defendant. The greatest number of those who give you an opinion- upon the signature, think it that' of the defendant, but counsel claim that the superior skill and opportunity of the witnesses for the defendant entitles them to the most weight; and ¡jarticularly, that the experience acquired by the cashier of the bank enables him to judge, with the greatest certainty, of handwriting. It is true, that experience and practice in judging of writing, as well as experience and practice in anything else, will enable a witness more readily to form an opinion upon the subject of his experience; but the knowledge'is not confined to particular stations; any j>erson may acquire it. It appears to us involved in no mystery. The same powers of' discrimination and of memor-*which enable us to distinguish faces, and the difference be- [298 tween plants and trees, is all that is required. We know with certainty the faces of our acquaintances, though -we have not always the power to describe particularly the points of difference in the faces of different individuals, or the minute particularities of any one. This skill is not limited to a knowledge of the face, while all' the features, or their expression, remain as we have been accustomed to see them. We know the face, though derangement has imparted to it a new appearance, or when distorted by pain or disfigured by wounds and presented in an entire new light. It is the image of the whole face that impresses the memory. The same faculties enable us to discriminate among different plants and trees, and to distinguish their varieties and the different species-of■ the same-general class. We daily nieet those who, with a single glance of 1 *304 the eye upon a tree, can tell the precise kind of fruit it will bear, and we would implicitly rely upon their opinion, although, if questioned, they'were unable to describe accurately the difference between the several species. We judge of writing as of other things, by its individual character as a whole. You must take the opinion of these witnesses, then, altogether, and judge of their testimony, as, under all the circumstances, they shall appear entitled-to weight, from their opportunity of knowing the defendant’s handwriting, and your estimate of their skill and judgment. A cashier of a bank is entitled to no more credit than any other person of equal skill.
. The particular formation of the letter g, upon which so much has been said, or of any other one letter, does not appear to us a very sure test of handwriting. Accident, haste, the position of the paper, the presence of a hair in the nib of the pen, or its more or less free discharge of ink, might essentially vary the turn of the letters. The writing given you in evidence, on which' are several signatures of the defendant, exhibits various turned letters, differing as much from each other perhaps as from the signature of the note in issue. The witnesses who judge of the turn of the letters, differ from each other. Messrs. Ross and Wiles find the difference in the letter g, Mr. Wright in the form of the S.
' 3. The other ground of defence is, that if the signature to the note be genuine, it was obtained by fraud, and is without consideration. The defendant has given notice to the plaintiff to show the consideration, and it is claimed that this obliges him to introduce positive proof on that point. By law, a note, like the one in question imports a consideration, and none need be shown in the first instance, to entitle the holder to recover. But between the original 299] *parties, it is competent to inquire into the consideration upon notice, and if suspicion be thrown upon the transaction, a jury may infer from thence that there was no consideration, if the plaintiff, who is supposed to know what it was, does not show it. The circumstances of suspicion, urged by the defendant, are- — the appearance of the note and writing; the plaintiff’s offer to sell it at a reduced price; the different tales he has told as to its consideration; the time and place of its execution; and the defendant’s being in Ohio at the date of the note, and for some'months before. Opposed to these circumstances the plaintiff urges his possession of the note; the improbability of crime; the disclosures made by Doctor Yan Harlingen; and the circumstances set forth in the answer to the bill of discovery. The difference in the color of the ink is supposed *305 not to be a very strong circumstance, because it is a conceded point that the body of the note was written by the plaintiff at a different time and place from the signature. Ink is not always made of the same material, nor does it always possess the same fixed and fast color. The original color of the ink may have been different, or a •part of the writing may have been more exposed to the action of the atmosphere, or the influence of light and heat than the-other, and in that way made to exhibit the appearance relied upon. The article in evidence presents a case of the kind. You -will observe that the pai’t of it which, when folded up, was outside and exposed, is much paler than the inside. The offer to sell at a reduced price, is deserving of more or less weight, according as you shall be satisfied it was made by the plaintiff, with a full knowledge of the defendant’s ability to pay. If made under the influence of rumors, prejudicial to the defendant’s pecuniary standing, and in doubt of his ability to pay, it would not bear strongly against the plaintiff’s right to recover.
Much stress is laid upon the fact that the note bears date in November, 1821, when the defendant was not in N. Jersey after March in that year. The position of the defendant’s counsel is a forcible one, that men do not mistake dates by anticipating the lapse of time. Errors in date most generally occur from the habit of writing, and the use of a date which has passed. It is improbable that by mistake a date should be used of time not elapsed. The contradictory statements made by the plaintiff to the witness, Yan Harlingen, and in answer to the bill of discovery, aro pressed upon your consideration. The declarations of the plaintiff could not have been introduced as evidence except at the instance of the defendant; but when .so given they must be taken altogether, and the truth drawn from them as from other testimony. You are bound to reconcile conflicting testimony Avithout fixing the charge of perjury upon [300 any one, if it can be done. We think the principle of the rule applicable to the declaration of parties, when related by witnesses, to be that neither falsehood nor crime should be imputed, if it can reasonably he avoided. The statements made by Dr. Yan Harlingen at different times agree, that the consideration of the note in issue was the note of Smith — they differ only as to the time and place of executing the note. The ansAver of the plaintiff on oath to the bill of discovery, called for by the defendant to aid his defence, and so make evidence, discloses the same consideration. The only discrepancy in these declarations is as to the time and place of executing the note. At one time the witness understood the plaintiff to state that the *306 note was' executed after the defendant returned to Ohio, between Lebanon and Cincinnati, as Brown his agent reported to him; at anoth ex-time he understood the plaintiff to state that the note was drawn and executed near Princeton, while the defendant was in N. Jersey. The answer in chancery'sets forth the transaction differing from one of these statements, though essentially corresponding with the other. You should bear in mind that it is the defendant who sets up these different defences, and upon him rests the burden of proof; as in all cases, the party who affirms any fact is bound to satisfy the jury, by proof, that it exists. He should do this by the best evidence the nature of the case admits of, or excuse the omission. Brown, the agent, is said to be dead- — -that excuses his non-production. It seems to me there are no insurmountable difficulties in the statement to Van Harlingen, if they relate to mere time and place. Considerable time has elapsed since the first statement was made. Was the witness induced by anything that transpired, to remember accurately all that was said, and does he do so? are questions worthy your consideration. Men are not apt distinctly to remember the minute particulars of conversations, unless specially induced todo so. The assumption is, that the note was obtained by fraud, or is forged, and proof is sought to be deduced from the plaintiff’s having in conversation mentioned different times and places when and where the note was executed. One of the statements the defendant drew from him on oath. It is submitted to you, gentlemen, upon the evidence, whether it is more probable the plaintiff should have committed the crime of forgery, and superad ded to it that of perjury, orbe mistaken in the time and place of making a note ten or twelve years ago; or that a witness should not be able to recollect, with perfect accuracy, a conversation with the plaintiff two or three years since, upon such 301] a particular. It is your duty to weigh care-*fully the testimony, examine it as reasonable men, and to elicit from it with the best light you have the truth. It would have been more satisfactory, if Smith’s evidence had been procured. From the testimony, it would seem that he is resident in Cincinnati, and for aught that appears, it was in the power of either party by his evidence to have put this controversy at rest. Why this has been neglected I do not know.
You will remember, gentlemen, that when the note was read to-you in evidence the plaintiff had made a prima facie right to recover, and he is entitled to your verdict unless the defendant shall have exonerated himself by proof of some one of his defences. He has undertaken to satisfy you in these particulars, and if he has failed, the plaintiff’s right remains. You will then consider all the circuxn *307 stances in evidence, and if you are satisfied the note was not ex eeuted by the defendant, or that it is a forgery, or was obtained by fraud, you will find for the defendant; but if, on the contrary, you are satisfied the note was executed by the defendant, and are not satisfied it was obtained by fraud, the plaintiff is entitled to your verdict, for the amount of the note and interest.
JFl and A. U. Dunlevy, for the defendant,
moved for a new trial, and argued that the court misdirected the jury as to Smith’s being alive and resident in Cincinnati; and as to there being no material contradiction in the plaintiff’s statement. They also urged a new trial because the witness, Van Harlingen, had by mistake omitted to state a material fact which he testified to on a former trial; and because the verdict was against law and evidence. They read an affidavit of the defendant, that he knew nothing of the note, &c.
T. Corwin contra.
It was admitted by counsel that a verdict for the plaintiff had been rendered in the Court of Common Pleas.
Verdict for the plaintiff for $1,308.45.
WRIGHT, J. delivered the opinion of the court. He adverted to the difficulty experienced by the court and bar, in our ill-constructed court-houses, in hearing accurately what was said by the court or bar, and supposed it was owing to that circumstance, that what he had said to the jury had not, in some particulars, been rightly apprehended by counsel. He recapitulated what he had said to the jury, upon the contested points, and said he thought he could not be misunderstood, as to what he said, for he now spoke from the same notes of the charge, prepared during the trial, from which he delivered the charge to the jury. He remarked upon the case, as made in proof, and said it was exceedingly desirable not *only that fair trials should be had, but that parties should [302 be satisfied with them. But if it were admitted that he had mistaken the testimony as to Smith’s being alive, and in Cincinnati, his remarks on that point could nothavemisled the jury, asthey applied equally to both parties. There have been two concurring verdicts, and the court are satisfied with the decision of the jury, on the merits of the case. The motion was overruled and judgment entered on the verdict.
Note. — The reporter has fully reported the above case, because the decision •was made the subject of newspaper discussion, shortly after it was made.