## Gilfillan et al., Appellant, *v.* Fife.

*School law—New school building—Necessity—Location — Discretion of school board—Abuse—Review.*

The question of the necessity for a new school building and its location, is a matter within the sound discretion of the school board; and the courts will not interfere with the decision of the board on such matters, where there is no abuse of discretion.

Argued October 21, 1919. Appeal, No. 134, Oct. T., 1919, by plaintiffs, from decree of C. P. Allegheny Co., Oct. T., 1919, No. 125, dismissing bill in equity in case of Alexander Gilfillan, R. K. McEwen and W. C. Degelman v. S. M. Fife et al., School Directors of School District of Upper St. Clair Twp. Before BROWN, C. J., MOSCHZISKER, WALLING and KEPHART, JJ. Affirmed.

Bill in equity for an injunction to restrain the erection of a school building.

MACFARLANE, J., filed the following opinion:

The bill was filed by the three plaintiffs on behalf of themselves as taxpayers and other taxpayers of the school district who might choose to join, and the prayer is for an injunction to restrain the erection of a school building and for further relief.

### FINDINGS OF FACT.

1. The school district comprises the Township of Upper St. Clair, and the directors are the five defendants.

2. By deed, dated June 6, 1919, Ellsworth E. Phillips et ux., conveyed to the school district a lot in the township containing 1.774 acres, the description being set

forth in paragraph eleven of the bill. The deed excepts and reserves the coal underlying the same. The purchase was for school purposes and the consideration was $2,600.

3. The coal which underlies the surface at a depth of approximately 120 feet had theretofore been conveyed and is now owned by the Pittsburgh Coal Company, with the right to mine all of the coal, the right to damages to the surface having been waived. When the coal is mined, there will be some subsidence and cracking of the surface and a building erected thereon would crack and be unsafe. To avoid this, it will be necessary, before the operations reach this lot, to acquire a block of coal under the building to be 130 x 170 feet, at a cost of about $900. The coal company has established a regular price for such reservations, negotiations have begun between the directors and the company, and the purchase can be made. When done, objection to the lot on this account will be removed.

4. The land is encumbered by an easement or right-of-way for two pipe lines, by grant described in the twelfth paragraph of the bill, the strip being eight feet wide and crossing the lot with the right of ingress and egress, the pipes to be laid in the same trench. Upon this right-of-way, the Manufacturers Natural Gas Company maintains and operates two high pressure gas mains laid thirty-two years ago. The school building proposed to be erected by the directors will be erected on the lot so that the nearest point to the gas lines will be seventy feet. The average pressure is 35 or 40 pounds and the highest pressure in recent years has been 110 or 120 pounds. The average and ordinary pressure is 75 or 80 pounds. It is not proposed to use gas in the school building from this line nor to run a connecting line therefrom to the building.

5. If the building is located as proposed, with no such connection, the danger from the gas line is very remote.

6. On one side of the lot there is a small branch of a run, but the land has never been flooded by high water except a very small portion on one occasion, due to local and temporary causes.

7. The lot is irregular in shape and on three sides there are improved public roads, on which many automobiles and other vehicles pass. On the longest side, the Washington road is very steep; on the other two sides the roads are approximately level. Where the Washington road intersects another road, there is a short curve. The portion of the lot bounded by the Washington road lies above that portion on the McLaughlin Run road, for about one-half of the frontage on the Washington road 20 feet, rising to about 35 feet above the McLaughlin Run road, and the other half from a point about 3 feet above the general level of the McLaughlin road, rising to about 15 feet above the road. There is a rise from the lowest point to the highest point on the Washington road of about 26 feet in a total distance of 320.60 feet. The land fronting on the McLaughlin road lies from a foot to two feet below the level of the road, but about 25 feet back it is higher than the road itself.

8. The location of the proposed building is on a steep slope, the front to face the Washington road, and it is proposed to have a large room for an auditorium for school exercises and for meetings of the people of the community in a basement.

9. It is practicable to erect the building on this location so far as problems of construction and grading are involved.

10. Plans have been prepared by an architect, employed by the board, for a building, and bids have been taken for the general construction and estimates made for heating and other reserved contracts, so that we find the entire cost of the building will be more than $40,000.

11. The contractors propose to erect a brick building with concrete foundations 91 feet 2 inches in length

and 48 feet, 10 inches in depth, with one story and a basement, with a sub-basement or cellar for a heating plant, with four rooms and hall on the main or school floor of the building, with adequate heating and ventilating systems and toilets to be flushed, water obtained from the roof and stored in a cistern. The proposed building is adequate and the plans have been submitted to the state board of education and the general plans and specifications have been approved. The board proposes to submit the heating plans to the state board.

12. Entrances from the Washington and McLaughlin roads are to be provided for automobiles and vehicles.

13. There is some space on the lot for a playground and the board has an option on about 1½ acres of land adjoining, at a price of $300 per acre, which, if purchased, will afford ample playground.

14. The proposed location is in a village called Clifton, the centre of population in that portion of the township, and no objection has been made that this district is not the proper place for a school. The present building nearest to the proposed location is a two-room frame building on the Washington pike, about 1,000 feet from the proposed location. It is inadequate, not properly heated, lighted or ventilated, is not sanitary and has two outside privies. In addition, the board has maintained a high school class in a lodge room, for which it has a lease. This room is not properly heated, lighted or ventilated.

15. The topography of the ground upon which the present school is erected will permit enlargement but the lot is small and very little of it is level. The playground is inadequate.

16. The high school class numbered eleven in 1919 and the total attendance in the main school building was 72. The total number of pupils in the township in that year was 269 with an average daily attendance of 200.

17. The board had the question of the erection of a new school building under consideration for about two years and the members inspected different sites in the neighborhood and gave careful consideration to six possible sites, including that of the present school. The title to the coal under all of them has been severed and the rights of the owner are the same as that under the proposed site.

18. Prior to 1918, there were, in addition to the Clifton school, a four-room school at Beadling in the northern end of the township still maintained, and three one-room schools, abandoned in that year. One of them is still owned by the district. Since that time motor trucks have been used to transport children from distant points to the school. Since 1916 the number of pupils has decreased from a total of 373 to 269, and the average daily attendance from 239 to 200. In the last two years there have been no new dwellings erected in the township.

19. The action of the board was taken after careful consideration and was not arbitrary.

### CONCLUSIONS OF LAW.

1. The question of the necessity of a new school building and the decision of the location is for the board. Under the facts found, they have not gone beyond the fair exercise of their discretion and the court cannot interfere.

2. The bill should be dismissed.

3. The matter is one of interest to the taxpayers and in view of the large number opposing the erection of a new school and objecting to the property chosen, the costs should be paid out of the treasury of the board of school directors.

The court entered a decree dismissing the bill. Plaintiffs appealed.

*Error assigned* was the decree of the court.

Arguments—Opinion of the Court.        [266 Pa.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *Alex Gilfillan* and *Hugh M. Stilley,* for appellants, cited: Lamb v. Redding, 234 Pa. 481.

*John C. Bane,* for appellees, was not heard.

PER CURIAM, January 5, 1920:

This appeal is dismissed and the decree of the court below affirmed, at appellants' costs, on the facts found by the learned chancellor below.