## Duff et al. v. Perry Township School District et al.

*School law—School budget—Cost of erecting addition to school-house— Constitutional limitation upon the incurring of debt—School Code of May 18, 1911, and amendments.*

1. Under section 563 of the School Code of May 18, 1911, P. L. 309, as amended by the Act of April 5, 1921, P. L. 91, the board of school directors of a school district of the third class shall, annually, at or before the time of levying the annual school taxes, prepare a budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year.

2. By section 537 of the Act of May 18, 1911, P. L. 309, as amended by section 1 of the Act of May 11, 1921, P. L. 508, it is required that in a school district of the third class all school taxes shall be levied and assessed by the board of school directors during the month of April or May of each year for the ensuing fiscal year, and shall not exceed twenty-five mills on the dollar on the total amount of the assessed valuation of all property taxable for school purposes therein.

3. It is provided by section 1210 of the Act of May 18, 1911, P. L. 309, as amended by section 1 of the Act of July 10, 1919, P. L. 910, as further amended by paragraph 24 of section 1 of the Act of April 28, 1921, P. L. 328, and by the corresponding section and paragraph of the Act of May 23, 1923, P. L. 328, that the board of school directors of a school district of the third class is authorized and directed to levy annually a tax on each dollar of the total assessment of all property assessed and certified for taxation to pay minimum salaries and increments of the teaching and supervisory staff provided for therein, which tax shall not be invalidated or affected by reason of the fact that it may increase the total annual school tax levy of any school district beyond the millage fixed or limited by law.

4. The constitutional provision against the incurring of debt beyond the limits therein set forth is intended as a restraint on spendthrift tendencies, to curb the extravagance of municipal expenditures on credit, to prevent municipalities from loading the future with obligations to pay for things the present desires but cannot justly afford, and to establish the principle that beyond the defined limits they must pay as they go. There is no constitutional restriction on municipal expenditures provided the municipality pays as it goes. What is prohibited is the incurring of debt. If the municipality has the money on hand or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction. The test is whether or not the municipality has the money on hand or provides a present means of raising it otherwise than by loan.

5. When a contract made by a municipal corporation pertains to its ordinary expenses and is, together with other like expenses, within the limit of its current revenues, and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts.

6. Section 601 of the School Code makes it the duty of the board of school directors of each school district to provide the necessary grounds and suitable buildings to accommodate all the children between the ages of six and twenty-one years in the district who attend school. An expenditure to carry out the legislative mandate cannot be said to be an improper budget item, and, under the requirements of the School Code, such expenditure must be held to be a part of the "ordinary expenses" of the school district.

7. At a meeting of the school board of a school district of the third class on May 24, 1923, a budget was adopted for the school year 1923-1924, including a cost of $50,897 for the erection of a new addition to an old school building, together with the heating and plumbing contracts connected therewith, and at the same meeting the school board adopted a resolution "that the tax levy for 1923-1924 be 25 mills for the budget, exclusive of teachers' salaries, and 17 mills for teachers' salaries, making a total of 42 mills." *Held,* that the budget did not exceed the statutory limitations and was legal.

8. The taxes levied did not exceed the statutory limitations and were legal, and the cost of the new addition to the old school building, together with the heating and plumbing contracts connected therewith, being within the current revenues and for ordinary expenses, did not constitute an increase of the indebtedness of the school district within the meaning of the constitutional restriction.

Bill for an injunction to restrain the collection of certain taxes and the proceeding further with the erection and construction of a new addition to an old school building. C. P. Fayette Co., No. 1129, in Equity.

*J. K. Spurgeon* and *H. S. Dumbauld,* for plaintiffs.

*Shelby, Henderson & Hackney* and *Brownfield & McDaniel,* for defendants.

VAN SWEARINGEN, P. J., July 24, 1923. — Plaintiffs are citizens and taxpayers of Perry Township, and defendants are members of the school board and tax collector of the township and a construction company to which a contract has been awarded for the erection of an addition to the Perryopolis school building. The bill prays for an injunction, preliminary until hearing and permanent thereafter, restraining defendants from collecting certain taxes levied by the school board, and from proceeding further with the erection and construction of the new addition to the old school building. A rule was granted on the defendants to show cause why an injunction should not issue, to which rule an answer was filed, evidence was offered, and a stipulation was entered into by counsel for the parties, in which it was agreed that the testimony taken should be considered and treated as testimony taken on final hearing and the case disposed of accordingly.

Under all the evidence before the court, we find the material facts to be as follows:

1. The plaintiffs are residents, citizens, owners of real estate and taxpayers of Perry Township. The defendants, J. K. McEntire, J. Buell Snyder, Walter Risbeck, Norman C. Piersol, Fred T. Edwards, Charles Thrasher and Ira Blair, compose the board of school directors of the township. The defendant, W. P. Lint, is the collector of taxes. The defendant, the Brownsville Construction Company, is a corporation engaged in construction work.

2. The School District of Perry Township is a school district of the third class, embracing the territory constituting Perry Township.

3. At a special meeting of the Board of Directors of the School District of Perry Township held May 24, 1923, the board adopted a budget for the school year 1923-1924, substantially as follows:

| | | |
|---|---:|---:|
| A. Expense of general control | | $4,707.00 |
| B. Expense of instruction | | 66,500.00 |
| C. Sundry activities | | 1,760.00 |
| D. Operation of school plant | | 8,010.00 |
| E. Maintenance of plant | | 2,100.00 |
| F. Fixed charges | | 2,890.00 |
| G. Sinking fund | | 6,737.50 |
| H. Capital outlay— | | |
| New buildings | $50,897.00 | |
| Heating | 5,395.00 | |
| Plumbing | 2,021.00 | |
| Furniture | 1,000.00 | |
| Other equipment | 2,915.65 | |
| | | 62,228.65 |
| Total budget | | $154,933.15 |
| Current bills outstanding not included in budget | | 658.29 |
| Teachers' salaries due May 29, 1923 | | 5,800.00 |
| Standing reward for arrest of "fire-bug" | | 1,000.00 |
| Total | | $162,391.44 |

4 D. & C.

Duff et al. *v.* Perry Township School District et al.

4. At the same meeting the school board adopted a resolution "that the tax levy for 1923-1924 be 25 mills for the budget, exclusive of teachers' salaries, and 17 mills for teachers' salaries, making a total of 42 mills."

5. The total assessed valuation of property in the School District of Perry Township for the year 1923, as adjusted by the county commissioners, was $2,919,350.

6. At the meeting of May 24, 1923, the estimated resources and revenues of the school district for the school year 1923-1924 were as follows:

| | |
|---|---:|
| 25-mill tax | $72,983.75 |
| Head taxes | 12,000.00 |
| Alien taxes | 3,000.00 |
| Due from Commonwealth for year 1922-1923 | 12,199.69 |
| Cash in bank | 6,994.59 |
| Unpaid school taxes for year 1922 | 7,303.12 |
| 17-mill tax | 49,628.95 |
| Total revenues | $164,110.10 |

7. At the time of the making of the budget the amount of the State appropriation for the fiscal year 1923-1924 was not, and is not yet, available, and could not then be ascertained. It may not become available during the present school year. Meanwhile, the salaries of the teachers must be paid by the school district as they become due.

8. At the time of the meeting of the school board on May 24, 1923, the school district had an outstanding bond issue of $50,000. At that time the sinking fund established for the retirement of the bond issue amounted to $14,028.25, deposited in the First National Bank of Perryopolis.

9. At the meeting of May 24, 1923, bids were opened by the school board for the construction of an addition to the school building at Perryopolis. The contract for the construction of the addition was awarded by the board of school directors to the lowest bidder, the Brownsville Construction Company.

10. On the same day a contract was entered into between the Brownsville Construction Company and the School District of Perry Township, whereby the Brownsville Construction Company agreed to construct the new addition at a total cost of $50,897, and the school district agreed to pay that amount to the Brownsville Construction Company for said work as follows:

"The sum of eighty per cent. of the cost of work completed and material delivered on the ground shall be paid for monthly.

"These payments shall be based on estimates to be made by the architect on or about the last day of each month and paid to the contractor on or before the tenth day of the following month.

"The balance of twenty per cent. of the contract price shall be paid to the contractor when the work included in this contract shall have been entirely completed and accepted by the board of education and the architect.

"The final payment shall be made within fifteen days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued.

"All work included in this contract shall have been entirely completed on or before the first day of November, 1923, and the contractor shall make every possible effort to complete the work at the time above stated, and shall see that no unnecessary delays are caused in the work."

11. At the time the contract was entered into the school district provided a present means of raising the sum of $50,897 otherwise than by loan. It levied

the 25-mill tax for the year 1923, which, together with other current revenues, will be sufficient, over and above the payment of the interest on its indebtedness and its other ordinary expenses, to meet and pay the entire cost of the erection and construction of said addition to said school building.

12. The school directors, in the exercise of their discretion, levied the 17-mill tax to pay the estimated minimum salaries and increments of the teaching and supervisory force of the school district.

The bill raises but two legal questions: (1) It is alleged that the taxes levied are in excess of the maximum millage allowed by law and in violation of the provisions of sections 537 and 1210 of the Act of May 18, 1911, P. L. 309, known as the School Code, and the amendments thereof; and (2) that the school board was without authority to make the contract for the new addition to the school buildings and obligate the school district to pay for the same, for the reason that such obligation, together with the heating and plumbing contracts in connection therewith, and the other outstanding floating and bonded indebtedness of the school district, constitute an increase of the indebtedness of the school district to an amount in excess of 2 per centum upon the assessed valuation of the taxable property situate therein, without having available from currrent revenues a sufficient amount of money to pay the current running expenses of the school district.

1. Section 563 of the School Code of May 18, 1911, P. L. 309, as amended by the Act of April 5, 1921, P. L. 91, provides: "The board of school directors of each school district of the second, third or fourth class shall annually, at or before the time of levying the annual school taxes, prepare a budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year. Such budget shall be apportioned to the several classes of expenditures of the district as the board of school directors thereof may determine; and thereafter no moneys apportioned for any class of expenditures shall be used for purposes other than designated for said class in said budget until after affirmative action by the board of directors at a legal meeting. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriation, available for school purposes in that district."

Section 537 of the Act of May 18, 1911, P. L. 309, as amended by section 1 of the Act of May 11, 1921, P. L. 508, provides: "In all school districts of the second, third and fourth class, all school taxes shall be levied and assessed by the board of school directors therein, during the month of April or May each year, for the ensuing fiscal year; and in school districts of the second class shall not exceed 20 mills on the dollar, and in school districts of the third and fourth class shall not exceed 25 mills on the dollar, on the total amount of the assessed valuation of all property taxable for school purposes therein: Provided, that each school district of the second, third or fourth class may also collect a *per capita* tax on each resident or inhabitant of such district over twenty-one years of age, as herein provided." That provision of the law, standing alone, would impose a limitation on the taxing power of school districts.

Sections 1210 and 1211 of the Act of May 18, 1911, P. L. 309, relate to the minimum salaries of teachers; and there are numerous amendments thereof providing for certain substantial increases in teachers' salaries and fixing the minimum thereof, and provision is made that a certain proportion of the minumum salaries of teachers shall be paid by the Commonwealth.

But section 1210 of the Act of May 18, 1911, P. L. 309, as amended by section 1 of the Act of July 10, 1919, P. L. 910, as further amended by para-

4 D. & C.

graph 24 of section 1 of the Act of April 28, 1921, P. L. 328, and by the corresponding section and paragraph of the Act of May 23, 1923, P. L. 328, provides: "Boards of school directors of school districts of the second, third and fourth classes are hereby authorized and directed to levy annually a tax on each dollar of the total assessment of all property assessed and certified for taxation therein to pay minimum salaries and increments of the teaching and supervisory staff provided for herein. Said tax shall not be invalidated or affected by reason of the fact that it may increase the total annual school tax levy of any school district beyond the millage fixed or limited by law: Provided, that in districts of the fourth class, the tax herein authorized, together with all other school taxes levied in the district, shall not exceed 35 mills on each dollar of the assessed valuation thereof." The provisions of the Act of May 23, 1923, P. L. 328, other than as already referred to, relate to teachers' salaries and the portions thereof to be paid by the Commonwealth.

In Pittston Township School District *v.* Dupont Borough School District, 275 Pa. 183, it was held that section 537 of the School Code relates only to the annual tax levy, and not to one compelled by order of court in order to pay an indebtedness of the district. In Com. *v.* Commissioners of Allegheny County, 40 Pa. 348, and Howard's Appeal, 162 Pa. 374, it was held that limitations of such character do not restrain larger levies when authorized by the legislature.

We are of opinion, therefore, that the tax levies made on May 24, 1923, were legal and do not exceed the statutory limitations.

2. Article IX, section 8, of the Constitution of Pennsylvania, provides: "The debt of any county, city, borough, township, school district or other municipality or incorporated district, except as herein provided, shall never exceed 7 per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt or increase its indebtedness to an amount exceeding 2 per centum upon such assessed valuation of property without the assent of the electors thereof at a public election in such manner as shall be provided by law."

That constitutional provision is intended as a restraint on spendthrift tendencies, to curb the extravagance of municipal expenditure on credit, to prevent municipalities from loading the future with obligations to pay for things the present desires, but cannot justly afford, and to establish the principle that beyond the defined limits they must pay as they go. No limit is fixed to expenditure for which present means of payment are provided, but a peremptory prohibition is put on expenditure on credit beyond the prescribed bounds. The words "debt" and "indebtedness" in the section of the Constitution quoted are not used in any technical way, but in their broad general meaning of all contractual obligations to pay in the future for considerations received at present: Keller *v.* Scranton, 200 Pa. 130.

There is no constitutional restriction on municipal expenditure, provided the municipality pays as it goes. What is prohibited is the incurring of debt. If the municipality has the money on hand, or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction: Addyston Pipe and Steel Co. *v.* City of Corry, 197 Pa. 41.

When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provision limiting the

power of municipal corporations to contract debts. If the contracts and engagements of municipal corporations do not overreach their current revenues, no objection can lawfully be made to them, however great the indebtedness of such municipalities may be, for in such case their engagements do not extend beyond their present means of payment, and so no debt is created: Erie City's Appeal, 91 Pa. 398; Reuting v. Titusville, 175 Pa. 512; Schilling v. Ohio Township, 260 Pa. 113.

The test is whether or not the municipality has the money on hand or provides a present means of raising it otherwise than by loan. The contracts attacked by plaintiffs in this case clearly stand the test. Instead of passing the cost of the new construction on to future generations, the school district is paying as it goes. The cost of the new addition was included in the budget of the school district for the current year, and in order to raise funds the school district levied a tax of 25 mills to meet the budget expenses, exclusive of teachers' salaries. The school district thus provided a present means of raising the money with which to meet the necessary contract expenditures otherwise than by loan, and the entire cost will be paid out of the current revenues of the present school year.

Section 601 of the School Code makes it the duty of the board of school directors of each district to provide the necessary grounds and suitable buildings to accommodate all the children between the ages of six and twenty-one years, in the district, who attend school. An expenditure to carry out the legislative mandate cannot be said to be an improper budget item, and certainly, under the requirements of the School Code, such expenditure must be held to be a part of the "ordinary expenses" of the school district. The necessity for the new structure and the advisability of the expenditures, in the absence of fraud or abuse of discretion, neither of which is alleged here, are in the sound discretion of the board of directors of the school district: Gilfillan v. Fife, 266 Pa. 171; Hibbs v. Arensberg, 276 Pa. 24.

We are of opinion, therefore, that the contract between the School District of Perry Township and the Brownsville Construction Company, together with the heating and plumbing contracts in connection therewith, does not constitute an increase of the indebtedness of the school district within the meaning of the constitutional limitation.

Our conclusions of law are as follows:

1. The tax levies made on May 24, 1923, were legal and do not exceed the statutory limitations. The 25-mill tax is within section 537 of the Act of May 18, 1911, P. L. 309, as amended by section 1 of the Act of May 11, 1921, P. L. 508. The levy of the 17-mill tax was authorized and directed by section 1210 of the Act of May 18, 1911, P. L. 309, as amended by paragraph 24 of section 1 of the Act of April 28, 1921, P. L. 328, and by the corresponding section and paragraph of the Act of May 23, 1923, P. L. 328.

2. The price of $50,897 fixed in the contract of May 24, 1923, between the Brownsville Construction Company and the School District of Perry Township, together with the heating and plumbing contracts in connection therewith, was within the current revenues of the school district for the school year 1923-1924.

3. Under the requirements of the School Code, the expenditures growing out of the contracts of May 24, 1923, are a part of the "ordinary expenses" of the school district.

4. The expenditures rendered necessary by the contracts of May 24, 1923, do not constitute an increase of the indebtedness of the school district contrary to article IX, section 8, of the Constitution of Pennsylvania.

4 D. & C.

5. The rule heretofore granted, requiring the defendants to show cause why an injunction should not issue restraining the collection of the taxes levied at the meeting of the school directors of May 24, 1923, and restraining the performance of the contracts of that date, should be discharged.

6. Plaintiffs' bill should be dismissed and the costs should be paid by plaintiffs.

And now, July 24, 1923, for the reasons stated in the opinion herewith filed, the rule for an injunction is discharged, an injunction is refused, the bill is dismissed, and it is ordered that the costs be paid by plaintiffs; this decree to be entered *nisi* according to rule.

Exceptions filed were overruled and dismissed, and the *nisi* decree was confirmed and made absolute.

From Luke H. Frasher, Uniontown, Pa.

NOTE.—Syllabus by the Court.