## Dethoff v. City of Reading School District.

*School law—School loans—Purposes of loans—Pre-election promises—Discretion as to time of expenditure—Location of buildings.*

1. A school district is not confined legally in the expenditure of the proceeds of a loan to pre-election campaign promises or programs, but it is limited only to the purposes for which the loan was approved by the electors, and it may use its discretion as to the time for the expenditures of the loan proceeds, provided only that the expenditures fall within the uses approved.

2. The matter of location and site for the erection of a museum and art gallery by the school district is in the discretion of the board of school directors.

*Equity—Injunction—School directors—Action within limits of powers—Prior appropriation for erection of building.*

3. A court of equity will not interfere with the exercise of discretionary powers by a school district or its officers, so long as the limits of those powers are not exceeded and no fraud, malice, bad faith or improper motives are shown, for otherwise it would be an assumption by the court of the right to exercise the power delegated only to the district or its officers.

4. A court of equity will not enjoin the erection of a museum and art gallery by a school district on the ground that the district does not have in its treasury, and has not appropriated, sufficient funds to permit it legally to contract for its erection, unless it is shown that there will not be sufficient funds in the district treasury when the contract is let. If there was unappropriated money in the treasury in sufficient amount at the time the contract was let, or if provision has been made for the collection of an annual tax sufficient to pay the interest and principal of the obligation incurred within thirty years, no injunction can issue.

*School law—Section 401 of the School Code—Erection of museum—Section 1 of article x of the Constitution—"Education."*

5. A school district acts within the legal limits of its powers under section 401 of the School Code in the erection of a museum and art gallery as a separate building.

6. Section 401 of the School Code, empowering boards of school directors to establish additional schools, including museums, etc., does not violate section 1 of article x of the Constitution of Pennsylvania, authorizing the legislature to provide a system of public schools wherein all the children of the Commonwealth above the age of six years may be educated.

7. The term "education" includes the cultivation of morality as well as the attainment of knowledge and intellectual culture.

Preliminary objections to bill. C. P. Berks Co., Equity Docket, 1925, No. 1416.

*John B. Stevens,* for plaintiff.

*George Eves* and *Snyder, Zieber & Snyder,* for defendant.

RICHARDSON, J., April 20, 1925.—The plaintiff, a resident taxpayer of the City of Reading, seeks an injunction against the defendant, the school district

of said city, to restrain the letting of a contract by the defendant for the erection of a museum and art gallery and from proceeding with the erection of the same. The defendant has filed an answer preliminarily objecting to the plaintiff's bill, which form of pleading under the new equity rules has been substituted for and taken the place of a demurrer.

The allegations in the plaintiff's bill are substantially as follows: That the defendant by propaganda induced the passage of a loan of $3,500,000 by the voters at the November election in 1923; that the defendant published and circulated statements as part of the pre-election program, setting forth the conditions of the school plant and emphasizing particularly deplorable conditions in the grade schools with regard to obsolescent and inadequate building capacity; that, prior to said election, the defendant stated that about one-half of said loan would be used for new elementary or grade school buildings; that, since the passage of the loan, the defendant, although spending some money for grade schools, plans to spend about $450,000 for a museum and other large sums for purposes other than grade schools, so that there will not be available for grade schools the amount stated in the pre-election campaign.

The substance of these allegations is that the defendant is not acting in good faith in the light of its pre-election program. There is, however, no charge of fraud or illegality, and plaintiff's counsel at the argument conceded that this allegation was "perhaps . . . more of a moral than a legal nature." The answer of the defendant on this point is conclusive according to law. The defendant is not confined legally in the expenditure of the loan proceeds to pre-election campaign promises or programs, but it is limited only to the purposes for which said loan was approved by the electors, and it may use its discretion as to the time for the expenditure of said loan proceeds, provided only that the expenditures fall within the uses approved. These uses or purposes the plaintiff's bill fails to set forth, and he asked leave at the argument to amend his bill in this particular. But an examination of the proposed amendment fails to disclose that a museum is not contained in the purpose and use for which the loan was approved. Neither does it provide that any particular proportion of the loan proceeds shall be used for grade schools. Even permitting the amendment, we fail to see how this will help out this part of the plaintiff's case. The amendment requested was as follows: "Amend paragraph 2 'of plaintiff's bill by adding the following—shall the debt of the School District of the City of Reading, Pennsylvania, be increased $3,500,000 for the purpose of providing necessary funds with which to acquire additional sites, grounds and buildings for educational purposes; to erect new buildings; to enlarge, alter, improve and repair present school buildings; and to provide permanent improvements and equipment to the grounds and buildings used and to be used for educational purposes in the said school district."

The second ground upon which the plaintiff bases his bill is that the defendant erred in the selection of a site for the museum and abused its discretion in the erection of a museum. The plaintiff does not aver in his bill that the site selected is not suitable and proper. He does not say that the defendant acted without due consideration and arbitrarily. He alleges, however, that the proposed site is in marshy land, far from the school centre, with no adequate facilities for reaching it, thereby implying that it is unfitted for the erection of a museum. But the bill does not aver that. the site cannot be properly utilized and improved, or that its selection is in itself evidence of fraud and bad faith. The answer of the defendant to this allegation is also conclusive according to law. The defendant answers that the matter of loca-

tion and site for the erection of school buildings is in the discretion of the board of school directors. Admitting that there may be an honest and sincere difference of opinion as to sites, and that in this case public opinion was unfavorable to the site selected by the defendant, nevertheless, differences of opinion require the exercise of judgment or discretion, and this discretionary power is vested by law in the school district.

The rule is stated in 32 Corpus Juris, 260, § 410: "A court of equity will not interfere with the exercise of discretionary powers on the part of a municipal corporation (which the defendant is) or its officers so long as the limits of those powers are not exceeded and no fraud, malice, bad faith or improper motives are shown, for otherwise it would be an assumption by the court of the right to exercise the powers delegated only to the corporation or its officers."

The question of the necessity for a new school building and its location is a matter within the sound discretion of the school board, and the courts will not interfere with the discretion of the board in such matters where there is no abuse of discretion: Gilfillan v. Fife, 266 Pa. 171 (1920); Pusker v. North Fayette Township, 71 Pitts. L. J. 236 (1922).

The bill does not allege that the selection of the site by the defendant was an abuse of its discretion, but in paragraph 7 it is alleged that "the erection of the museum and art gallery at this time, in the face of the facts hereinabove set forth, is illegal and is an abuse of the discretion of the said board."

This question of discretion of school directors is fully discussed in Roth v. Marshall, 158 Pa. 272: "The subject of controversy in this case is the location of a district school-house. Reduced to its simplest terms, the question raised is whether the exercise of official discretion of a board of school directors shall be supervised and directed by a court of equity. If so, the selection of teachers and text-books, the fixing of the rate for the levy of school and building taxes, the arrangement of the course of study, together with other similar duties, will be hereafter done subject to the opinion of the courts. The administration of the school laws will in that case depend on the discretion of a chancellor, whose decrees will be enforced by injunction or mandatory order. Such a conclusion would do violence to the school laws and to the well-settled rules that fix the limits of official discretion. . . . In the case of school directors who neglect or refuse to perform an official duty, the Court of Quarter Sessions has a summary jurisdiction and may remove them from office and appoint others to fill their places. For an abuse of discretion or an act contrary to law, the remedy is in the Common Pleas. But for a mistake in judgment as to the time or manner of performance of their official duties, they are answerable to the constituency that elects them. They must act—their action must be within the legal limits that bound their powers. If they refuse to act or go beyond the fair exercise of their discretion, the courts can exercise control over them. If neither of these conditions exist, but they proceed to the discharge of their duties, exercising their official discretion as to the manner, the courts cannot interfere."

A court of equity will not enjoin a municipal corporation (such as a school district) from doing what the law authorizes it to do: 32 Corpus Juris, 260, § 410. The objections of the defendant to the second ground on which the plaintiff's bill is based must, therefore, be sustained.

This brings us to the third and final contention of the plaintiff as set forth in his bill, that the erection of a museum is illegal; first, because its erection as a separate building is not contemplated by the law; and, second, because the defendant "school district does not have in its treasury nor has it appro-

priated sufficient funds to permit it legally to contract for the erection of the said museum and art gallery."

This latter allegation the defendant answers by saying that it is entirely insufficient in law to base an injunction, because it does not aver "that there will not and cannot be sufficient funds in the treasury (of the defendant) at the time such contract may be entered into to discharge the obligation created thereby." Also, that it is not averred "that such contract, if entered into, will create an indebtedness in excess of the constitutional limit of indebtedness." And, further, that the bill does not aver "that there was not sufficient funds in the treasury (of the defendant), unappropriated at the time the contract was authorized and executed, to meet the obligation created thereby."

These latter objections of the defendant to the plaintiff's bill must also be sustained. The test is not whether the defendant had in its treasury at the time the plaintiff's bill was filed and before letting the contract for a museum sufficient funds to carry out the contract. But the question is rather "Would there be such funds in the treasury and were they there when the contract was let?" If there was unappropriated money in the treasury in sufficient amount at the time the contract was let, no injunction could issue: Booth *v.* Weiss, 15 Phila. 159. But the law does not require any money to be in the treasury as a prerequisite of a school district's right to contract. It is sufficient if provision is made for the collection of an annual tax sufficient to pay the interest and principal of the obligation incurred within thirty years: Constitution of Pennsylvania, art. IX, § 10, 1 Purd. Dig. 199.

And now as to the allegation that the erection of a museum is illegal and its erection as a separate building is not contemplated by the law. As stated above, a court of equity will not interfere with a municipal corporation when it acts within the authority given it by law, and it is only when it transcends those legal limits that it is amenable to a court of equity by way of injunction: 2 Story's Eq. 955, note *a.* The question then is, "Did the defendant school district transcend the legal limits of its powers?"

That a school district has a right to establish a museum is clearly set forth in section 401 of the "School Code" as follows: "The board of school directors in every school district in this Commonwealth . . . may establish, equip, furnish and maintain the following additional schools or departments for the education and recreation of persons residing in said district, which said additional schools or departments, when established, shall be an integral part of the public school system in such school district, and shall be so administered, namely: High schools, . . . evening schools, kindergartens, libraries, museums," etc.

The constitutional authority for this act of assembly is found in article X, section 1, of the Constitution of Pennsylvania, as follows: "The general assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated." In Hart *v.* Sharpsville Borough School District, 2 Ches. Co. Reps. 521, the court held that the term "education" includes the cultivation of morality as well as the attainment of knowledge and intellectual culture.

In view of the foregoing provision of the "School Code," which expressly authorizes the establishment of museums by a school district, there can be no doubt as to the authority of the defendant in this case in appropriating money for a museum. Neither does the establishment of such a museum in a separate building appear to be an abuse of discretion by the defendant, in view of

the broad powers contained in the foregoing statute and in the decisions already cited.

For these reasons, the preliminary objections filed by the defendant to the plaintiff's bill must be sustained.

And now, to wit, April 20, 1925, the court, upon due consideration, sustain the preliminary objections in the answer to the plaintiff's bill, and the plaintiff is hereby required to amend his bill accordingly within thirty days from this date; otherwise the said bill to be dismissed, with costs.

From Wellington M. Bertolet, Reading, Pa.