# Philadelphia's Petition.

*Municipalities—Eminent domain — Condemnation of land for public library—"Municipal buildings"—Acts of March 26, 1903, P. L. 63, and March 14, 1907, P. L. 12.*

There is nothing in the Acts of March 26, 1903, P. L. 63, and March 14, 1907, P. L. 12, which gives the right to the City of Philadelphia to take, through condemnation proceedings, a site for public library purposes. The words "municipal buildings" in the Act of 1903, does not cover a public library building.

Argued Oct. 23, 1914. Appeal, No. 193, Oct. T., 1914, by the City of Philadelphia, from order of C. P. No. 1, Philadelphia Co., March T., 1914, No. 1671, making absolute rule to set aside appointment of viewers In re Appeal of the City of Philadelphia. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Petition to appoint a board of view to assess damages for land selected in the rear of 1014 South 49th Street, Philadelphia, for purposes of a public library building.

Viewers were appointed under the petition. Subsequently the court made absolute a rule to revoke the appointment on the ground that the City of Philadelphia had no statutory authority to condemn land for public library purposes.

*Error assigned* was the order of the court.

*Otto Wolff, Jr.,* with him *Edwin O. Lewis,* Assistant City Solicitors, and *Michael J. Ryan,* City Solicitor, for appellant.—Where two statutes are in pari materia, and the one contains a term which generically includes a term contained in the other, the more general term must

be understood to exclude the less general and more spe-
cific one: Bourguignon Building Assn. v. Common-
wealth, 98 Pa. 54; Dick's App., 106 Pa. 589; Queen v.
Payne, 1 Law. Rep. Crown Cases 27; Kansas City
Southern Ry. Co. v. Wallace, 132 Pac. Rep. 908; Mat-
thews v. Kimball, 70 Arkansas, 451; Strange v. Board
of Commissioners, 173 Indiana 640; United States Ce-
ment Co. v. Cooper, 172 Ind. 599; McReynolds v. Peo-
ple, 230 Ill. 623; Weiss v. Swift & Co., 36 Pa. Superior
Ct. 376; Laird v. Pittsburgh, 205 Pa. 1.

The words "municipal buildings," as used in the act,
do not constitute a technical expression, and their mean-
ing has never been restricted, either by judicial construc-
tion or popular usage. The appellant therefore submits
that any building owned by a municipal corporation and
devoted to a purpose within the scope of the municipal
government, is a municipal building: M'Collough v.
Maryland, 4 Wheaton 316; Aurora & G. Ry. Co. v.
Harvey, 178 Illinois 477; Jerome v. Ross (N. Y.), 7
John Ch. 315; City of Detroit, Etc., v. Moesta, 91 Mich.
149.

*Walter C. Rodman,* for appellee.—The right of emi-
nent domain is a very high and arbitrary one, and arises
only ex necessitate rei, and will not be presumed to exist
in a corporation, unless by express legislative grant:
Phillips v. Dunkirk, Warren, Etc., R. R. Co., 78 Pa. 177;
Lance's App., 55 Pa. 16; Woods v. Greensboro, Etc.,
Gas Co., 204 Pa. 606; Lazarus v. Morris, 212 Pa. 12;
Titusville v. Gahan, 34 Pa. Superior Ct. 613; Com. v.
Krickbaum, 199 Pa. 351.

OPINION BY KEPHART, J., October 11, 1915:
This appeal presents the question of the right of the
City of Philadelphia to take, through condemnation pro-
ceedings, a site for public library purposes. The right
of eminent domain is in derogation of the absolute right
of ownership and disposition of real property; it is an

incident of government and exists in municipal or other corporations only as direct authority from the government by act of assembly may be shown therefor. The exercise of a certain function of municipal government to which the acquisition of real property is necessary will not of itself give rise to the right of eminent domain to condemn this property. As stated in Lazarus v. Morris, 212 Pa. 128: "The right to take private property for this public use is asserted under the power of eminent domain. Such power is an attributive of sovereignty. From the very nature of society and organized government it must belong to the state. It exists independent of constitutional mandate, and it existed prior to constitutions. It lies dormant, however, in the state until legislative action points out the occasions, the modes and the agencies for its exercise: 10 Am. & Eng. Ency. of Law (2d Ed.) 1049. It can only be called into operation by the authority of the legislature, and must be exercised in the manner, by the tribunal, and with the limitations provided by law: City of Madison v. Daley, 58 Fed. Repr. 751. This rule has long been recognized in our State. It therefore becomes necessary for any corporation, public or private, or individual claiming thereunder, asserting title under the power of eminent domain, to point to the provisions of the act of assembly under which the power is asserted. The grantee takes what the act gives, and no more." Act of assembly granting this right must be construed strictly. The language of the act should be clear and unmistakable, and questions of doubt should be resolved against the existence of this right: Phillips v. Dunkirk, Etc., Railroad, 78 Pa. 177. "Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation. Courts cannot correct supposed errors, omissions or excesses of the legislature": Dwarris on the Interpretation of Statutes, Edn. of 1871,

p. 144. Unless the right clearly appears it should be denied. The city holds that the Act of March 26, 1903, P. L. 63, gives this right. It provides as follows: "That the several cities of this Commonwealth shall have power to acquire by purchase any real estate, within the city limits, which they may need upon which to erect or construct necessary municipal buildings, fire engine houses, gas or electric light works, and, within or without the city limits, within the same county, upon which to erect hospitals, water works, and for the purpose of a poor farm; and in case they cannot agree with the owner or owners as to the price thereof, or in case the owner or owners thereof are absent or are incapacitated from any cause, or are unknown, by reason of which no agreement can be made, it shall be lawful for each respective city, and they are hereby authorized and empowered to take and appropriate for said purposes the necessary real estate, within or without the city limits as the case may be, after an ordinance shall have been passed providing for such taking and appropriation." This act was amended by the Act of March 14, 1907, P. L. 12, so as to include sufficient real estate for present and future use, upon which to erect and construct work houses, or houses of detention, poor-houses, garbage or incinerating furnaces, and sewage disposal works or plants, with the necessary filter beds, appliances, drains and sewers, and for any extension thereof. Appellant urges that the ordinary meaning of the words "municipal buildings," appearing in the Act of 1903, includes a library. It is a well known fact that all free library buildings do not belong to municipalities. It is safe to assume that the preponderance of ownership is not in municipalities. These facts, control, use and ownership, would, of themselves, deprive the words "municipal buildings" of the meaning contended for by appellant even if so generally understood. That the act did not intend to cover library sites may be gathered from other reasoning. It was not the intention of the act to limit

the words "municipal buildings" to those buildings specifically designated in the act, or to buildings similar in class or kind to those designated. The character of buildings there mentioned exhausts the entire class, and the rule of construction, ejusdem generis, would have no application. But here we have an act using a general term to describe a certain class of buildings. It is sufficiently broad to include many of the buildings and uses specifically mentioned in this act and the act of 1907. These words, when followed by these specific designations, and preceded by the word "necessary," limit and define the words "municipal buildings," and have the effect of giving a meaning which we think most common to the words, used in the sense intended, namely, buildings necessary to conduct the administrative affairs of the city government. A public library is not such a building. If a municipal building, it belongs to that class of municipal affairs not "necessary" to the conduct of the government, but affording recreation, education, pleasure and enjoyment. The existence of these affairs is optional with the city. The legislative intention, as gathered from both acts of assembly, is in harmony with this view, as that body deemed it necessary, in 1907, to enact further legislation enabling municipalities to take land for purposes clearly coming under appellant's idea of the term "municipal buildings."

We therefore conclude that the language of the Act of 1903, and its supplement, the Act of 1907, did not embrace a site for a public library. This conclusion is not in opposition to Laird v. Pittsburgh, 205 Pa. 1, relied on by appellant. It was there held that where land is condemned for a lawful purpose, the fact that a part of it was used for a purpose incidental to the lawful purpose will not destroy the right acquired or prevent the use for such incidental purpose; that a library in legal effect did not differ from museums, picture galleries, and music halls, which, with the grounds for outdoor recre-

594, (1915).] Opinion of the Court.

ation, etc., make up a park, and that had the taking been solely for a library site a different question would be presented to the court in that case.

The assignment of error is overruled and the judgment is affirmed.