## Straus v. City of Philadelphia et al.

*Municipal corporations — Eminent domain — Condemnation of land for municipal power plant—Necessary municipal buildings—Acts of March 26, 1903, July 20, 1917, and July 8, 1919.*

1. Municipal corporations have no inherent right of eminent domain, but can appropriate private property only to the extent authorized by some act of the legislature.

2. The Act of March 26, 1903, P. L. 63, authorizing cities to condemn real estate, to construct "necessary municipal buildings," does not include real estate on which to erect a municipal power plant for power, heat and light.

3. The Acts of July 20, 1917, P. L. 1143, and July 8, 1919, P. L. 783, give municipalities the power to condemn property for public libraries and certain other public buildings; but a municipal power plant, as an adjunct to any such building, is not itself a necessary municipal building within the meaning of the Act of March 26, 1903, P. L. 63.

4. Such buildings as the Free Library, the Museum of Art, the Academy of Fine Arts and the School of Industrial Art are not included within the terms of the Act of 1903, and a power plant, to be used as an adjunct to such buildings, is not indirectly included within that act.

5. Acts granting the right of eminent domain must be construed strictly, and questions of doubt should be resolved against the existence of the right.

Bill for injunction. C. P. No. 2, Phila. Co., Sept. T., 1920, No. 9767, in Equity.

*J. Sigmund Levin* and *Arthur S. Arnold,* for plaintiffs.

*William T. Connor,* for County Commissioners.

*Samuel Rosenbaum,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for defendants.

STERN, J., Nov. 7, 1921.—The complainants filed a bill in equity, alleging that they are the owners of certain real estate, situate at 24th and Vine Streets, in the City of Philadelphia, and that on Jan. 3, 1920, the Mayor of
1 D. & C.

the City of Philadelphia approved an ordinance appropriating this property "for municipal purposes." The bill further alleges that this ordinance is invalid and void, and that the City of Philadelphia is without authority to appropriate the property, and prays for an injunction restraining the defendants from taking possession of the property. The County Commissioners of Philadelphia demurred to the bill, but the City of Philadelphia and the Mayor of the City of Philadelphia filed an answer, in which it was alleged that the "municipal purpose" sought to be obtained by the acquisition of the property covered by the ordinance was to establish in that place a municipal power plant to furnish power, heat, &c., for a group of public buildings now in course of erection or contemplated in the immediate future, the said buildings including the Philadelphia Museum of Art, the Academy of Fine Arts, the School of Industrial Art, the Free Library of Philadelphia and the Municipal Court.

In the argument three questions were raised and discussed: (1) Has the City of Philadelphia the right to appropriate property for the purposes set forth in the City's answer above referred to? (2) Even if it has such right, must those purposes be expressly set forth in the ordinance, or is the phrase "for municipal purposes" sufficient? (3) Is the ordinance invalid because it provides that possession of the property should be taken by the County Commissioners on behalf of the City?

The conclusion at which we have arrived in regard to the first of these questions makes it unnecessary to consider the other two.

The City of Philadelphia, like all other municipal corporations, has no inherent right of eminent domain. It is an agency of the Commonwealth and can appropriate private property only to the extent to which such appropriation is authorized by some specific or general act of the legislature.

In Lazarus *v.* Morris, 212 Pa. 128, it is said, per Mr. Justice Elkin: ". . . The right to take private property for this public use is asserted under the power of eminent domain. Such power is an attribute of sovereignty. From the very nature of society and organized government, it must belong to the State. It exists independent of constitutional mandate, and it existed prior to constitutions. It lies dormant, however, in the State until legislative action points out the occasions, the modes and the agencies for its exercise: 10 Am. & Eng. Ency. of Law (2nd ed.), 1049. It can only be called into operation by the authority of the legislature, and must be exercised in the manner, by the tribunal and with the limitations provided by law: City of Madison *v.* Daley, 58 Fed. Repr. 751. This rule has long been recognized in our State. It, therefore, becomes necessary for any corporation, public or private, or individual claiming thereunder, asserting title under the power of eminent domain, to point to the provisions of the act of assembly under which the power is asserted. The grantee takes what the act gives,, and no more. . . ."

This statement of the law is quoted with approval in Philadelphia's Petition, 60 Pa. Superior Ct. 594 (affirmed by the Supreme Court, *per curiam,* in 253 Pa. 434).

The right of eminent domain is not inherent in municipalities, but may, by appropriate legislation, be conferred upon them: 20 Corpus Juris, 536.

In Pennsylvania there exists a long series of acts conferring upon municipalities the right to condemn land for purposes therein specified. There is admittedly no statute giving to the City of Philadelphia the specific power to condemn private property for the purpose of a municipal power plant. What the City relies upon, however, as justifying the ordinance under consideration

is the Act of March 26, 1903, P. L. 63, which provides that "the several cities of this Commonwealth shall have power to acquire by purchase any real estate, within the city limits, which they may need, upon which to erect or construct necessary municipal buildings, fire engine-houses, gas and electric light works, and, within or without the city limits, within the same county, upon which to erect hospitals, water-works, and for the purpose of a poor-farm; and in case they cannot agree with the owner or owners as to the price thereof, or in case the owner or owners thereof are absent or are incapacitated from any cause, or are unknown, by reason of which no agreement can be made, it shall be lawful for each respective city, and they are hereby authorized and empowered to take and appropriate for said purposes the necessary real estate within or without the city limits, as the case may be, after an ordinance shall have been passed providing for such taking and appropriation."

The City contends that the phrase "necessary municipal buildings" is broad enough to include a building to be used for the purpose of a municipal power plant, which is to furnish power and heat to the buildings set forth in the defendants' answer. Unfortunately for this contention, however, it was pointed out by Mr. Justice Kephart, in Philadelphia's Petition, 60 Pa. Superior Ct. 594, that: ". . . These words, when followed by these specific designations, and preceded by the word 'necessary,' limit and define the words 'municipal buildings,' and have the effect of giving a meaning which we think most common to the words used in the sense intended, namely, buildings necessary to conduct the administrative affairs of the city government." It was, therefore, held in that case (and affirmed by the Supreme Court in 253 Pa. 434) that a site for public library purposes did not come within the meaning of the words "necessary municipal buildings." If, therefore, as far as the Act of March 26, 1903, P. L. 63, is concerned, the Free Library of Philadelphia is an institution, the land for which cannot be acquired by the City of Philadelphia under the right of eminent domain, it would seem to be clear that that act gives no such right in the case of the Philadelphia Museum of Art, or the Academy of Fine Arts, or the School of Industrial Art; indeed, such institutions are practically linked together in the opinion just referred to. It is true that in subsequent acts (July 20, 1917, § 23, P. L. 1143, and July 8, 1919, § 1, P. L. 783) municipalities are given the power to acquire, through condemnation proceedings, property for the purpose of erecting thereon public libraries and certain other public buildings. But the point is that no such power is granted by the Act of March 26, 1903, under the phrase "necessary municipal buildings" (which is the only act on the statute books as to which any argument could be made that a municipal power plant is included), because, if the phrase in question refers only to buildings necessary to conduct the administrative affairs of the city government, such a plant does not come directly within the meaning of the act; and if such buildings as the Free Library, the Museum of Art, the Academy of Fine Arts and the School of Industrial Art are not included therein, it would necessarily follow that a power plant to be used as an adjunct to such buildings is not indirectly included within the act in question.

It may be argued that if, under other statutes, the City has the right to acquire by condemnation a public library building, it would thereby impliedly gain the right to acquire a power plant for the purpose of furnishing power and heat to such a building. In answer to such an argument, it is to be pointed out that statutes conferring upon corporations, private or public, the right of eminent domain must be strictly construed. "Acts of assembly

1 D. & C.

Straus *v.* City of Philadelphia et al.

granting this right (the right of eminent domain) must be construed strictly. The language of the act should be clear and unmistakable, and questions of doubt should be resolved against the existence of this right. . . . Unless the right clearly appears, it should be denied:" Philadelphia's Petition, 60 Pa. Superior Ct. 594; 253 Pa. 434. "There must be no effort to prove the existence of such high corporate right (the right to take private property), else it is in doubt; and, if so, the State has not granted it. 'All grants of power by the Government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its existence and operation than any other:' Lewis on Eminent Domain, § 254;" Pennsylvania Telephone Co. *v.* Hoover, 209 Pa. 555. So, also, Wood *v.* Greensboro Natural Gas Co., 204 Pa. 606, and Pennsylvania Mutual Life Ins. Co. *v.* Philadelphia, 242 Pa. 47, 56.

Moreover, the municipal power plant, which the City says it intends to erect, is not to be a part of a public library building or directly connected with it, but, on the contrary, is to be situated several blocks distant therefrom. Then, again, the purpose of the building is to supply power and heat to various other buildings of a kind which admittedly the City cannot acquire by condemnation proceedings, and, therefore, *a fortiori,* a power plant incidental to such buildings cannot be acquired by eminent domain. Indeed, most of these buildings have not been erected or even definitely planned; they are merely said to be "contemplated." It is true that, under the doctrine of Laird *v.* Pittsburgh, 205 Pa. 1, where land is condemned for a lawful purpose, the fact that a part of it is used for a purpose incidental to the lawful purpose will not destroy the right acquired or prevent the use for such incidental purpose. But the purpose of the municipal power plant, as stated in the City's answer in the present case, to furnish power and heat to such contemplated buildings as the Philadelphia Museum of Art, the Academy of Fine Arts and the School of Industrial Art, can scarcely be said to be merely incidental to the furnishing of power and heat to the Free Library or to the Municipal Court. Moreover, as above pointed out, it would seem extremely doubtful whether such a power plant can be acquired by eminent domain, even with respect to such buildings as can be so acquired, where the power plant is located in a distant building, several city squares away from the main buildings which it is intended to serve.

The court has, therefore, come to the conclusion that the right to condemn the plaintiffs' property for the purpose of the proposed municipal power plant is not conferred by the Act of March 26, 1903, P. L. 63, nor by any other statute, and that being so, no such right exists in the City of Philadelphia under present legislation.

On bill and answer, therefore, it is ordered and decreed that the relief prayed for by the plaintiffs in the bill in equity be granted, and that the defendants and their agents be and they hereby are enjoined and restrained from taking possession of the whole or any part of the complainants' property as described in the bill in equity, and from proceeding in any condemnation proceedings affecting said property under the Ordinance of Jan. 3, 1920, or otherwise. In order to make the record harmonious, the demurrer entered by the County Commissioners is overruled, although if the City had not filed an answer setting forth the purpose for which the land was to be taken, a different question, technically, might have been presented upon argument merely upon bill and demurrer.

Defendants to pay the costs of these proceedings.