## Solar Electric Company's Appeal (No. 1).

*Corporations—Eminent domain—Express grant—Doubtful charter.*

1. The right of eminent domain is a very high and arbitrary one, and arises only ex necessitate rei and will not be presumed to exist in a corporation, unless by express legislative grant given in plain words or by necessary implication.

2. A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation.

3. All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain.

*Boroughs—Eminent domain—Right to condemn plant of electric company—Ordinances—Appeal—Acts of May 14, 1915, P. L. 312, and June 27, 1923, P. L. 845.*

4. Under the Act of May 14, 1915, P. L. 312, as amended by the Act of June 27, 1923, P. L. 845, a borough has no power to condemn and appropriate the property and franchises of an electric light and power company located within its limits and furnishing electric light and power to the municipality and its citizens and to others outside the borough limits.

5. The acts did not contemplate anything more than a purchase of the property and franchises, or at most a power to fix a price when there was a willingness on the part of the corporation to sell but disagreement as to price.

6. The words in section 44 "so taken," in the phrase "to assess the value of the plant so taken," do not import the existence of the power of eminent domain.

7. The act gave no power to a borough to effectuate a purchase or acquisition, and in this respect it differs from cases arising under acts where there was a condition of a right of purchase by the municipality in the grant of the franchise.

8. It is not in all cases that an appeal to the quarter sessions from a borough ordinance is the exclusive remedy; in any event the appeal must be by a party aggrieved.

9. A borough cannot apply for the appointment of viewers to condemn the plant of an electric company, where the ordinance merely provides for the acquisition of the plant by purchase, if it can be acquired by consent of the majority of the holders of the stock of the company, and if that cannot be done, then for the construction of a plant of its own.

Argued April 11, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 88, March T., 1927, by Solar Electric Company, a corporation, from order of C. P. Jefferson Co., appointing viewers in the Matter of the Petition of Brookville Borough for the appointment of viewers to appraise and value the plant and works of the Solar Electric Company. Reversed.

Petition for appointment of viewers. Before HARVEY, P. J., specially presiding.

The petition of the Supreme Court states the facts.

Petition granted. The Solar Electric Company appealed.

*Error assigned* was order, quoting record.

*Raymond E. Brown*, with him *Charles J. Margiotti, W. M. Gillespie* and *Brooks, English & Quinn*, for appellant.—The power of eminent domain lies dormant in the State until legislative action is had pointing out the occasions, the modes and the agencies for its exercise: Lazarus v. Morris, 212 Pa. 128; Philadelphia's Petition, 60 Pa. Superior Ct. 594; 20 C. J. 516.

The language of the act should be clear and unmistakable and questions of doubt should be resolved against

the existence of this right: Phillips v. Dunkirk, etc., R. R., 78 Pa. 177; Pennsylvania Telephone Co. v. Hoover, 209 Pa. 555; Crescent Pipe Line Co.'s Petition, 56 Pa. Superior Ct. 201.

The sections of the Borough Code under consideration do not confer the power to condemn either expressly or by necessary implication, and hence the power does not exist.

If the legislation in question can be construed to mean that a borough may condemn a privately owned electric light plant, such legislation is unconstitutional and void, for the reason that such a subject is not clearly expressed in the title of the act: Day v. Lansdale Boro., 28 Pa. Dist. R. 330.

*W. N. Conrad,* for appellee.—The Borough of Brookville has always had the option to purchase the plant and works of the Solar Electric Company. On a failure to agree upon the purchase price, the act provided a method of arbitration for the determination of the price.

The Commonwealth of Pennsylvania gave the Solar Electric Company a privilege or a license transferable to or revocable by Brookville Borough upon compliance with the terms imposed: United Lighting Co. v. Pub. Serv. Com., 84 Pa. Superior Ct. 24; Allegheny City v. Gas & Pipeage Co., 172 Pa. 632.

In the case of the Solar Electric Company, no franchise term was given by the Borough of Brookville. The term was therefore one at will or sufferance, subject to the conditions of the Act of 1891.

It is only necessary that the title of an ordinance should fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into its body: Allegheny County Home's Case, 77 Pa. 77; Com. v. Green, 58 Pa. 226.

The title is a necessary part of an act, and a very important guide to its right construction: Halderman's

App., 104 Pa. 251; Yeager v. Weaver, 64 Pa. 425; Phila.
v. Scott, 81 Pa. 80; P. R. R. v. Riblet, 66 Pa. 164.

OPINION BY MR. JUSTICE SCHAFFER, June 25, 1927:

Whether a borough has power to condemn and appropriate the property and franchises of an electric light company located therein and furnishing electric light and power to the municipality and its citizens and to others outside the borough limits is the question we are to answer on this appeal. From the commencement and throughout the proceedings appellant has denied the power of the municipality to take its property.

The argument made to us covered a wide field. We think the proper contentions of the parties lie within a small compass, that of the language of the statute under which the borough claims the right to take from the company its property and franchises—the Borough Code of May 14, 1915, P. L. 312, sections 41-50, as amended by the Act of June 27, 1923, P. L. 845. Unless the power rises out of the expressions which the legislature there used it does not exist.

That part of the statute with which we are to deal is loosely drawn. Section 41, page 379, provides that boroughs may manufacture or purchase electricity, for the use of their inhabitants, and section 43, page 380, that whenever any electric light company is furnishing electric light to any borough or the public "such borough is authorized to purchase the works of such......corporation, at such price as may be agreed upon by the borough or [and]......a majority in value of the stockholders of such corporation." Section 44 is thus worded: "Upon failure so to agree, the borough may present a petition to the court of common pleas asking for the appointment of viewers to assess the value of the plant and works so taken"; and then goes on to provide for the appointment of viewers. Section 45, after outlining certain features of the proceedings before the viewers, requires that they, after having "taken such testimony

...... touching the value of the property and franchises,
...... shall determine the amount of damages that such
...... corporation will sustain, and to whom payable,
and make report thereof to the court," with a provision
for the entry of judgment on the report. Then follow
sections providing for an appeal to the common pleas,
for a trial therein, and for an appeal to the Superior or
Supreme Court and also for the filing of exceptions.
Section 50 reads: "Before any borough shall construct an
electric plant, *or purchase the property of any* ......
*electric light company,* the question of the increase of
the debt of such borough, for any of such purposes, shall
first be submitted to the qualified voters of the borough,
in the manner provided by law for the increase of in-
debtedness of municipal corporations."

Bearing in mind the criteria for discovering whether
the power of eminent domain is conferred,—as laid down
by Mr. Justice KEPHART, then of the Superior Court, in
Philadelphia's Petition (60 Pa. Superior Ct. 594) and
adopted by this court on appeal to it (253 Pa. 434), that
the power "exists in municipal or other corporations
only as *direct* authority from the government by Act of
Assembly may be shown therefor...... Acts of Assem-
bly granting this right must be construed strictly. The
language of the act should be clear and unmistakable,
and questions of doubt should be resolved against the
existence of this right...... unless the right clearly ap-
pears it should be denied,"—where can it be said that in
the provisions of the act we are considering there is
"direct" authority for the bestowal of the power.
Strictly construing the act, we see that it covers in un-
mistakable terms the purchase of the works furnishing
light to the borough (it will be observed that there is no
requirement that the works must be located therein) at
an agreed upon price; nowhere is it said that they may
be condemned if there is no agreement. The thought in
the legislative mind would seem to have been that the
corporation would agree to accept the fixed price rather

than subject itself to the borough's competition. It is true that in the 44th section it is provided that, upon failure so to agree, the borough may present a petition to the common pleas for the appointment of viewers "to assess the value of the plant and works so taken," but how can it be affirmed, recurring to what was said in the cited case, "that the language of the act [is] clear and unmistakable." Is there not bound to arise in any impartial mind a doubt as to just what the legislature was driving at, whether it contemplated anything more than a purchase or at most authority to fix a price when there was a willingness to sell but disagreement as to price? Certainly the purchase feature was the dominant idea in the legislative mind, as witnessed by the financing provision of the acquirement of the property: "Before any borough shall construct an electric light plant or purchase the property of any person, copartnership or electric light company [not a word covering condemnation], the question of the increase of the debt" shall first be submitted to the voters. Again recurring to the opinion from which we have been quoting, with doubt in our minds as to what was intended by the legislature, we read, "The questions of doubt should be resolved against the existence of the right." This has always been the rule, at least since Chief Justice BLACK's classic opinions in P. R. R. Co. v. Canal Commissioners, 21 Pa. 9, and Com. v. Erie & Northeast R. R. Co., 27 Pa. 339, "A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation."

It is urged that the words "so taken," in the phrase "to assess the value of the plant so taken," import the existence of the power of eminent domain. These words are a very small foundation upon which to erect the superstructure of so great a power, particularly when account is made of the fact that under the literal wording of the statute a borough may appropriate a plant furnishing it with light wherever located. There are some boroughs

in the State which are being furnished with light by plants miles away from their limits.

Even appellee's counsel does not put the stress of his argument on the proposition that the power of eminent domain in its ordinary acceptation is given by the sections of the act in question, rather he contends that a somewhat novel form of the power is created,—the right to effectuate a purchase or acquisition. He says in his printed brief: "It [the borough] has always tenaciously maintained that such a taking of the plant and works of the Solar Electric Company was an enforcement of its right to purchase" and he relies for support of his position in the main on Hanover Boro. v. Hanover Sewer Co., 251 Pa. 95, and the water company cases like Williamsport's Case, 232 Pa. 232; White v. Meadville, 177 Pa. 643, and others where there was a condition of a right of purchase by the municipality in the grant of the franchise. This is best illustrated in the Hanover Sewer Company Case. There permission to the sewer corporation to operate in the borough (p. 100) "was granted to it only under the express provisions of the statute which empowered the municipality to become at any time the owner of the sewerage system and to take over the property of the company by paying the actual value at the time of taking." No such situation presents itself in the pending proceeding. The difference between the act which gave rise to that litigation and the one we are now considering is manifest at first glance. In that enactment (Act of April 19, 1901, P. L. 827) municipalities were by express words empowered to take over the sewers constructed by a corporation within their limits by paying the actual value thereof and in the event of disagreement as to the amount to be paid "the same shall be ascertained in the same manner as damages are now ascertained for private property taken, injured or destroyed" in laying out and opening streets. Furthermore, in that case no question was raised as to

the right of the municipality to take over the sewer system.

The water company cases are all differentiable from the one at bar as will be seen by an examination of Reynoldsville Boro. v. Reynoldsville Water Co., 247 Pa. 26. Under the Water Company Act of 1874, a borough had the right to become the owner of the property of such a company engaged in furnishing it with water, not as a result of an agreement with the company, but by paying therefor the net cost of the plant with ten per cent interest per annum added. This was made an express condition of the charter of the company and the transfer after twenty years' operation was compulsory on demand. Under the later Act of 1907, P. L. 355, as pointed out in the opinion, there was no compulsion to sell, the only effect of not selling was a loss of exclusive franchise. In that case, it was said (p. 28) : "It was thus made a condition of the charter of such companies,— evidently in view of the fact that the exclusive privilege given them, under the terms of the act, might become oppressive to the municipality,—that after twenty years' enjoyment of the franchise given, they would, upon demand of the municipality and payment of the prescribed consideration, transfer their entire property to the latter. The act was compulsory. The later Act of May 31, 1907, P. L. 355, confers no right to acquire adversely the property of water companies, but simply provides a method of ascertaining the price to be paid in cases where one party is willing to buy and the other to sell." All this might be said of the act here in question.

That the sections of the Borough Code of 1915 and its supplements with which we are concerned do not confer power on boroughs to appropriate electric plants is made certain when we look at other sections of the statute where the power of eminent domain is given. In section 2 of chapter VI, article XIX, page 386, boroughs are authorized to "acquire by purchase or condemnation" real estate for the construction of wharves and

docks; in chapter VI, article XIV (a), section 1, page 366, in constructing bridges they "shall have the right to take, use and occupy private property;" in section 17, subdivision (d), page 368, they are empowered to "purchase, condemn and maintain" toll bridges; in chapter VI, article XV, section 3, page 370, boroughs may acquire conduits "by purchase or by condemnation;" in chapter VI, article XVII (a), section 25, page 377, they may acquire "by purchase or condemnation" lands necessary to preserve water supplies from contamination; in the same chapter, article XVII, section 15, page 384, they can "take and appropriate" real estate for garbage and incinerating furnaces; in chapter IX, article I, section 2, page 412, they are empowered to "enter upon, appropriate and acquire......private property" for park purposes; and in chapter X, article I, section 4, page 419, they may "enter upon and appropriate private property" for the purpose of establishing public libraries. When the lawmakers desired to confer the power of eminent domain on boroughs, they did so in clear and unmistakable terms.

It may be worth while to mention again the legal principles which control when it is set up that the right of eminent domain, one of the greatest attributes of sovereignty, has been conferred. They have their best statement in Chief Justice BLACK's opinions. In P. R. R. Co. v. Canal Commissioners, 21 Pa. 9, 22, he said: "Corporate powers can never be created by implication nor extended by construction......In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation"; in Com. v. Erie & Northeast R. R. Co., 27 Pa. 339, 351: "That which a company is authorized to do by its act of incorporation, it may do; beyond that all its acts are illegal. And the power must be given in *plain* words or by *necessary* implication. All powers not given in this direct and unmistakable manner are withheld.......If you assert that a corporation had cer-

tain privileges, show us the words of the legislature conferring them......A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation." At a later date we said, "The right of eminent domain is a very high and arbitrary one and arises only ex necessitate rei and will not be presumed to exist in a corporation, unless by express legislative grant": Phillips v. Dunkirk, Warren & Pittsburgh R. R. Co., 78 Pa. 177, 180; and as time went on this was spoken, "All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other": Pennsylvania Telephone Co. v. Hoover, 209 Pa. 555, 557. Applying these principles to the provisions of the Act of Assembly in question, it cannot be said that either directly or by necessary implication the power is conferred upon the borough to appropriate appellant's property.

It is the contention of appellee that appellant should have appealed to the court of quarter sessions from the ordinance passed by the borough for the purpose of acquiring its property, and that, not having done so, it is barred from raising any question as to the borough's action. The Borough Code provides, page 393, section 9, "Complaint may be made to the next court of quarter sessions, upon entering into recognizance, with sufficient security to prosecute the same with effect, and for the payment of costs, by any person aggrieved in consequence of any ordinance, regulation, or act done or purporting to be done in virtue of this act, and the determination and order of the court thereon shall be conclusive." It is not in all cases that an appeal to the quarter sessions is the exclusive remedy: Wright v. France et al., 279 Pa. 22; Manorville Boro. v. Flenner, 286 Pa. 103. But a sufficient answer to the contention of the appellee is to be found in the fact that the ordinance did not by its terms undertake to condemn appel-

lant's property and hence strictly appellant was not aggrieved in consequence of it. It is entitled "An ordinance authorizing the acquisition by *purchase* and operation of the plant and works of the Solar Electric Company, for the construction of a distribution system of electricity, and purchase of electricity for the use of the inhabitants of the Borough of Brookville, Pennsylvania." It provides "That the borough acquire and take the plant and works of the Solar Electric Company, as provided by the Borough Code of 1915, P. L. 312, as amended and supplemented. In the event that the plant and works of the Solar Electric Company cannot be acquired as aforesaid, without the consent of the holders of a majority of the issued and outstanding shares of the capital stock of the Solar Electric Company, that the borough, subject to the approval of the Public Service Commission of Pennsylvania, insofar as such approval may be necessary, construct and operate a distribution system of electricity therefor, for the use of the inhabitants of the Borough of Brookville." It will thus be seen that what the ordinance purported to do was to authorize the acquiring of the plant and works of the company by the borough if they could be acquired with the consent of the holders of a majority of the shares of stock of the company, and if they could not be acquired in this way, then to construct and operate a system of its own. Under the terms of this ordinance the borough could not do what it is now seeking to do even if it did possess the power of eminent domain under the Borough Code.

In the view that we take of the major question involved, other contentions of the parties become of no consequence.

The assignment of error is sustained and the order and judgment of the court below are reversed at the cost of appellee.

See Solar Electric Co.'s Appeal (No. 2), infra, page 372.