## Wayne Township School District v. Lantz et al.

*A. M. Nichols*, for plaintiff.

*K. W. Scott* and *W. T. H. Pauley*, for defendants.

SAYERS, P. J.—The School District of Wayne Township filed a petition in this court at the above number and term, praying for the appointment of viewers to assess damages for the taking of land in Wayne Township, Greene County, Pennsylvania, belonging to the defendants, which the petitioner claims had been taken and condemned by the board of school directors of said district as a site for a high school building and playgrounds adjacent thereto.

Viewers were appointed by the court and notice was given to the defendants in this proceeding of the time and place when the viewers would meet for the purpose of viewing the premises and estimating the damages, if any, to which the defendants would be entitled. Before the time set for the view had arrived, the defendants in this case filed a petition and obtained a rule on the School District of Wayne Township to show cause why the petition for the appointment of viewers should not be quashed and the condemnation proceedings instituted by said school district against said defendants should not be declared illegal and void. At the same time an order was made staying proceedings on the part of the viewers and restraining the school directors, their agents, employees and contractors, from entering upon the land of defendants or interfering with defendants in any way until the further order of the court. An answer to this rule was filed by the School Directors of Wayne Township.

Depositions were taken on behalf of the plaintiff, and the matter was submitted to the court on depositions, argument and briefs.

### Findings of fact.

1. The School District of Wayne Township, Greene County, Pennsylvania, is a municipal division of the said county and township for school purposes, with all the powers and authority in its school directors as provided by the Act of May 18, 1911, P. L. 309, and its several supplements and amendments.

2. Said district is constituted as a district of the fourth class.

3. George Kerr, President; Gail Wood, Vice-President; B. F. Thralls, Paul O. Eddy and John H. Henderson, members, constituted the duly elected and qualified school directors of said township at the inception of this proceeding, and Clyde Hoy was the secretary of the said board of school directors.

4. The tract of land belonging to the defendant respondents in this proceeding is a part of a tract of land formerly belonging to Ulysses Grant Lantz, situate in Wayne Township, Greene County, Pennsylvania, adjoining land of D. J. Hoy, lands now or formerly of Jacob Eddy, Samuel Eddy, and lots in the village of Brave, containing 180 acres, more or less.

5. Dora M. Lantz, executrix and trustee under the will of Ulysses G. Lantz, deceased, and Dora M. Lantz and Lyle E. Lantz are the owners of and the only persons interested in the lands sought to be condemned for school purposes in this proceeding.

6. No part of the tract of land proposed to be taken for school purposes is used as a burial ground, nor does any part belong to any incorporated institution of learning, incorporated hospital association or unincorporated church, incorporated or unincorporated religious association, and no part of said land is actually used or held for the purpose of a burial ground, institution of learning, hospital association, church or religious association whatsoever.

7. The Peoples Natural Gas Company maintains a large pumping station at Brave, in Wayne Township, Greene County, Pennsylvania, most of the population of that village being skilled laborers and mechanics employed in and about said pumping station.

8. The School District of Wayne Township maintains a two-room school house for the accommodation of pupils in said district, and is using and occupying a tool house owned by the Peoples Gas Company as a third school room, and there are now in the district between 102 and 106 children of school age.

9. For the past four years the residents of the district and the school board have been considering the advisability of constructing a high school building and maintaining a high school at Brave, and building in connection therewith an auditorium and a gymnasium.

10. About four years before this proceeding began the Peoples Natural Gas Company, through Mr. J. B. Tonkin, its Vice-President, realizing the need in the community, proposed to the school board to assist in the erection of an auditorium and a gymnasium in connection with the proposed new school building.

11. On April 21, 1928, the following motion and action of the board appears on the minutes of the school board:

(Depositions, page 3.) "By motion of Gail Wood and seconded by Paul O. Eddy, that we erect at Brave a new four-room school building. Motion carried."

12. At a special meeting held on May 26, 1928, the following minutes appear in the minute book:

(Depositions, page 4.) "The Wayne Township School Board met at Brave, Saturday, May 26, 1928. Members present: Mr. George Kerr, Mr. B. F. Thralls, Mr. John Henderson, Gail Wood and Paul O. Eddy. Meeting being for the purpose of meeting with Mr. J. B. Tonkin, Vice-President of the Peoples Natural Gas Company."

13. At this special meeting, Mr. Tonkin made a proposition to the school board for erecting an auditorium and gymnasium. The minute book entry reads:

(Depositions, page 5.) "Moved by Gail Wood and seconded by John H. Henderson, that we acept the proposition made by Mr. J. B. Tonkin, representing the Peoples Natural Gas Company, by which the Wayne Township School Board would construct a four-room brick school building, and the Peoples Natural Gas Company to construct at their expense in connection with the said school building a combined auditorium and gymnasium. Said school building and gymnasium to be erected on the location staked off on the land of U. G. Lantz heirs farm by the Wayne Township School Board and Mr. J. B. Tonkin on this 26th day of May, 1928."

14. On the same day the entire school board, in company with J. B. Tonkin, H. D. Freeland, County Superintendent, Conrad Compton, architect, Clyde Hoy, Secretary, and some others, met on the site selected, when the following motion was made:

(Depositions, page 6.) "Moved by B. F. Thralls and seconded by George Kerr, that a committee be appointed for the purpose of securing a piece of approximately three acres of land belonging to U. G. Lantz heirs farm, and upon which the location for this new school building has been made."

15. On the same day, George Kerr, the president of the board, appointed a committee composed of B. F. Thralls, Gail Wood and Paul O. Eddy. The minute book under the same date shows the following entry:

(Depositions, page 9.) "Moved by P. O. Eddy and seconded by Gail Wood, that the Wayne Township School Board take necessary steps to condemn that portion of ground on the U. G. Lantz heirs farm staked off on this 26th day of May, 1928, for the purpose of erecting thereon a new school building; also whatever ground is necessary in connection therewith as a playground. This resolution to be effective only in case the committee appointed under the above resolution is unable to secure a reasonable and satisfactory price upon the ground desired."

16. The minute book under date of June 14, 1928, shows the following:

(Depositions, page 10.) "The committee consisting of B. F. Thralls, P. O. Eddy and Gail Wood, appointed to secure a price on approximately three acres of land belonging to the U. G. Lantz estate, on which a new school building has been located, reports that on May 26, 1928, the committee talked with

Dora M. Lantz and Lyle E. Lantz and was unable to agree on any price for any land for school purposes. The committee being informed by Dora M. Lantz that she would not consider selling any land to the School District of Wayne Township for school purposes, and the school district would have to condemn any land it got from her."

17. On June 22, 1928, Geo. D. Jenkins, C. E., made a survey and plot of the site selected, containing 4.74 acres. Nothing appears in the minute book to show that this survey was ever officially authorized or adopted by a resolution of the Wayne Township School Board.

18. On July 30, 1928, the School District of Wayne Township, Greene County, Pennsylvania, presented its petition at the above number and term, praying for the appointment of viewers to view the premises sought to be condemned and assess the damages, etc. There is nothing on the minutes of said school board directing the presentation of this petition.

19. It was the unanimous agreement and opinion on the part of the school directors of said district that a school building of five rooms was necessary at Brave, and, having in view the future needs of the district, that a provision should be made, if possible, for an auditorium and a gymnasium and the necessary playgrounds surrounding said buildings.

20. Part of the 4.74 acres of land staked off by the school board is on low ground, next to Dunkard Creek, and frequently overflows, but it appears to be necessary to take such strip in order to reach the public road leading from Brave to the village of Blacksville. The draft seems to indicate that the proposed school building could only be approached in other directions over alleys in the village of Brave.

21. On May 26, 1928, the school board, through a committee appointed by its president, endeavored to agree with the defendants upon a price or value of the land which they proposed to take, and which they had designated and marked by boundary lines and indicated by stakes driven in the ground. It was represented to Dora M. Lantz that they proposed to take something over three acres and they offered to show her a rough draft of the tract which they proposed to take. (Depositions, page 8.) She told them that she did not want a school house there. (Depositions, page 14.) She also said that she did not have any land for school purposes and would not put a price on any. (Depositions, page 29.) On another occasion her attorney was offered $400 an acre for the land by A. M. Nichols, solicitor and agent of the school board, and his proposition was refused. (Depositions, pages 17, 18.)

22. At the meeting of May 26, 1928, the proposal of the Peoples Natural Gas Company, made a few years before, was reconsidered, and on that date was renewed by Mr. Tonkin, who had a meeting on the day before with certain citizens and employees of the gas company in the Brave School District, in which it was agreed that the proposed building could not be erected for $10,000, and practically all of the employees at the pump station agreed to donate sixty-six hours' labor towards the erection of the auditorium and gymnasium. That proposition was accepted by the school board on May 26th, and later embodied in the writing attached to the deposition, marked Exhibit No. 2.

23. The said written confirmation, marked Exhibit No. 2, is as follows:

"To the School District of Wayne Township,
    Greene County, Pennsylvania:

"*Whereas*, the School District of Wayne Township proposes to erect a new school building at Brave in said School District, and on the 26th day of May, 1928, selected a site therefor on the U. G. Lantz farm; and

"*Whereas*, The Peoples Natural Gas Company, by its Vice-President and General Manager, after a meeting with the citizens of Brave on May 25, 1928, did, on May 26, 1928, make a verbal offer to the School District of Wayne Township to build at the expense of the Gas Company, for the use of said School District, a combined auditorium and gymnasium as a part of the new school building, provided that the expense thereof would be reasonable; and

"*Whereas*, the plans and specifications as prepared by C. C. Compton, architect for the School District, and the estimates of costs as prepared by the contractor, clearly indicated that the cost would greatly exceed the amount the Gas Company was prepared to contribute, said amount being in the neighborhood of the $10,000 appropriated for such purpose; and

"*Whereas*, the architect was to alter the plans and specifications and the contractor was to prepare new estimates of costs for submission to the Gas Company for approval; and

"*Whereas*, the contractor is now unable to accurately estimate the costs for the reason that the work is not to be started until the spring of 1929; and

"*Whereas*, the citizens of Brave, at the meeting of May 25, 1928, agreed to assist in reducing the cost by contributing part of their time toward the construction of the building in excavating, mixing and pouring of concrete, rough carpenter work, truck driving, painting, etc.; and

"*Whereas*, the offer to build the auditorium and gymnasium by the Gas Company was made as a gift or donation to the said School District, and after its completion was to be under the sole control and management of the School District.

"You are, therefore, advised that The Peoples Natural Gas Company now confirms in writing its verbal offer of May 26, 1928, as above set forth, made in person to the said School District by J. B. Tonkin, its Vice-President and General Manager.

"Dated at Pittsburgh, Pa., November 9th, 1928.

"THE PEOPLES NATURAL GAS COMPANY.

"By (s) J. B. TONKIN,

"Vice-President and General Manager."

24. That the above proposal and all the other evidence in this case is that the Peoples Natural Gas Company are to contribute $10,000 toward the erection of an auditorium and gymnasium, and the citizens of Brave will assist in its construction, and after its completion, the buildings and grounds are to be under the sole control and management of the school district.

25. It is difficult to tell from the testimony, including the minutes of the school board, just the order in which the events of May 26, 1928, occurred, but apparently all the proceedings were had and all the minutes were entered before the committee to agree with the defendants called on Dora M. Lantz at 4 P. M. on that afternoon to ascertain what damage she wanted or what price she would take for the land.

26. On May 26, 1928, the school board selected a site for its building and playgrounds.

27. It tried on that day, and afterwards, to agree with the owners upon the price of the land, but failed to reach an agreement.

28. It decided on May 26, 1928, and so informed the owners, of the amount and location of the land desired.

29. It entered on May 26, 1928, and took possession thereof, occupied the land, and designated and marked the boundary lines thereof.

30. The meeting of May 26, 1928, was a special meeting, called for the purpose of meeting Mr. J. B. Tonkin.

## Discussion.

It is alleged on the part of the defendants respondent, in their petition for the rule to show cause, that the school directors have not proceeded in the manner required by law to condemn the land required by them for school purposes and that their proceedings and acts are illegal and void:

(a) Because it does not appear by the petition that the location and amount of the real estate required by the School District of Wayne Township for school purposes was determined by the board of school directors by a majority vote prior to the resolution of May 26, 1928, nor was it ever determined by a majority vote of all of the members of the board as required by law.

(b) That no effort was made by the school directors to agree with the petitioner on a price for said land prior to the passage of the resolution of May 26, 1928, and prior to their entry upon the land.

(c) That no resolution was passed by the board making any offer to petitioners for the land to be condemned or authorizing any person to negotiate for the purchase of the land.

(d) That it does not appear by the petition for viewers that the school board followed the procedure laid down in sections 604 and 605 of the School Code of May 18, 1911, P. L. 309, in any particular.

(e) That the resolution of May 26, 1928, is insufficient and not in conformity with the law because it does not show any attempt to agree with the petitioners or identify and designate the lands proposed to be taken or give the location and amount thereof.

(f) That the school district is not attempting to appropriate the land solely for school purposes, but that they are appropriating it for the use of the Peoples Natural Gas Company who will be permitted to control the auditorium and gymnasium, and that the school board will permit the use of the grounds by the company as a ball park.

(g) That the amount of land proposed to be condemned is in excess of any needed for school purposes and is not reasonably necessary.

(h) That the joint control and management of said auditorium and gymnasium is in direct violation of article IX, section 7, of the Constitution of Pennsylvania.

The exercise of the right of eminent domain, whether directly by the State or its authorized grantee, is necessarily in derogation of private right, and the rule is that such authority must be strictly construed. No principle of law is better settled than that a municipality can only exercise the right of eminent domain when it is conferred upon it by the Legislature expressly or by necessary implication, since a municipal corporation has no more right than any other corporation to condemn property: McQuillin on Municipal Corp., 352; Laird v. Pittsburg, 205 Pa. 1; Lazarus v. Morris, 212 Pa. 128, 131; Philadelphia's Petition, 60 Pa. Superior Ct. 594, 596; Solar Electric Co.'s Appeal (No. 1), 290 Pa. 156, 165. There are numerous cases in the books to the effect that school districts are creatures of the statutes, and have only such powers as are thereby given them: Mulligan v. School District, 241 Pa. 204, 207. It, therefore, follows that if the statutory requirements for the condemnation of land for school purposes have not been complied with by the official action of the board of school directors, the entire proceedings are void: Redstone Township School District's Petition, 4 D. & C. 609.

Section 307 of The School Code of 1911 provides that each board shall have specified times and places at which to hold its meetings, and designates what shall be called regular meetings and special meetings, section 310 provides that members shall have reasonable notice of all special meetings, and sec-

tion 309 provides: "No business shall be transacted at any special meeting except that named in the call sent to the members for such special meeting; provided, that special meetings may be called for general purposes."

It is objected that the meeting of May 26, 1928, was a special meeting and that no notice thereof was given to the school directors; consequently, the resolutions passed at that meeting with reference to the condemnation of the school lot are illegal and void. This would be true if it were not for the fact that the minutes show that all the members of the board were present. The law directs that notice shall be given to all of them in order that the business to be transacted may be lawful and regular: Redstone Township School District, 284 Pa. 325. If one or more of the directors had not been present at the meeting, then this objection would be good, but since they were all present and took part in the meeting, the manner in which the meeting was called is not of vital importance, nor are the matters to be considered at the meeting.

The minutes of the meeting show that it was called for the purpose of meeting with Mr. J. B. Tonkin, presumably with relation to the proposition of the Peoples Natural Gas Company to assist in the district's building program, but since the directors were all present, and all of them knew that the purpose of the meeting was not only to confer with Mr. Tonkin but to select the site for a new school building, to mark the boundaries thereof, to try to agree upon the purchase thereof from the landowner, and finally to appropriate the land for school purposes, and it being their apparent intention to take action on these matters, objections to the resolution of May 26, 1928, on this ground alone cannot be sustained.

The objection, however, as stated above in paragraph *(a)*, to the effect that the minutes of the meeting of May 26th show that the various resolutions were not adopted by a majority vote of all of the members of the board, as required by law, presents a more serious proposition. The School Code of 1911 provides as follows:

"Section 403. The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: . . .

"Purchasing, selling or condemning land. Locating new buildings or changing the locations of old ones. . . . Establishing additional schools or departments. . . ."

The resolution of April 21, 1928, providing for the erection of a new school building, is followed on the minutes by the words "Motion carried." The various resolutions passed on May 26, 1928, do not show any vote on the motion, either affirmatively or negatively, to construct a new school building combined with an auditorium and a gymnasium, and the same is true of the motion directing the committee to secure a portion of the Lantz farm upon which to erect the buildings, and the same is true also of the resolution providing for the necessary steps to condemn the lot selected. There was some testimony on the part of the directors that their actual vote was unanimous, but this fact does not appear by the minutes, and the minutes are the best evidence of the action of the school board.

Directors can only bind the district by their official acts, of which the minutes are the best evidence: Wachob & McDowell *v.* School District of Bingham, 8 Phila. 568; In re Appeal of Sykesville Borough, 91 Pa. Superior Ct. 335, 340. The burden is on the party claiming the right to act under a resolution of a school board to show its regularity and legality, where the minutes were not kept in the way prescribed by the statute: Coal and Iron Co. *v.*

Dunphy et al., 11 Dist. R. 218. If the minutes had shown that the resolution had been "carried unanimously," it would have been a substantial compliance with the statute: Tobin v. Morgan, 70 Pa. 229. It cannot subsequently be shown that the word "unanimous" was inadvertently omitted from the minutes: Ryan v. Norwegian Township School District, 39 Pa. C. C. Reps. 506.

The directions of the law as to the manner in which the vote must be recorded are mandatory: Strathern v. Gilmore, 184 Pa. 265, 273; Waltman v. Albany Township School District, 64 Pa. Superior Ct. 458, 465. Inasmuch as all the directors were present at the special meeting and understood the purpose of the meeting, the resolutions to build a new building, to establish an additional room or rooms and an auditorium and gymnasium, and to appropriate and condemn land necessary therefor, might have been sufficient to accomplish their object if the vote taken had been recorded in the proper manner. If the minutes had shown that the motions were carried unanimously, that would have been a sufficient compliance with the law: McCandless v. Summit Township School District, 55 Pa. Superior Ct. 277, 280.

We must hold that none of the resolutions, hereinbefore referred to, show an appropriate record of an affirmative vote, and we must hold, as the Supreme Court held in Jackson v. Conneautville Borough School District, 280 Pa. 601, that the acts of a school board of which there is no record of any affirmative vote relating thereto, are in violation of section 403 of the Act of May 18, 1911, P. L. 309, and are void. The resolutions, therefore, preliminary to the condemnation of the land in this case for school purposes, being void, it necessarily follows that the petition for the appointment of viewers must fall, not being grounded upon proper action of the school board, and the petition must be quashed and dismissed.

It is unnecessary to pass upon the question as to whether the resolutions of the school board preliminary to the condemnation proceedings were in regular order, nor is it necessary to determine whether the school board followed the procedure to condemn the land in the order laid down in sections 604 and 605 of the School Code. It is suggested in the case of Lewisburgh School District v. Harrison et al., 290 Pa. 258, 266, that there is a certain order of procedure to be followed, as stated in the following language:

"It is plain, therefore, that the order of procedure for condemnation proceedings as set forth in section 605 of the School Law follows this line: (1) The selection of the site; (2) disagreement as to price; (3) decision on the amount of land and location; (4) entry, taking possession and occupancy, being one and the same act, concurrently performed by going upon the land; (5) designating and marking the boundary lines; after which steps the school district 'may use the same for school purposes.'"

The facts in this case indicate that the board undertook to do all of these acts in one day and they did substantially all that is required above, but the disagreement with the landowners as to price followed all their other actions and was not reported by the committee until a subsequent meeting. It is apparent, however, that they were not able to reach an agreement with the landowners, and it is also a fact that they attempted to reach such an agreement long before they filed a petition in this case, and if their resolutions in this case had been properly adopted and so shown by their minutes, there would be no difficulty in sustaining the petition for condemnation in this case.

It has also been suggested that the buildings and land were to be under the partial control of the Peoples Natural Gas Company, but the evidence in this case disposes of that contention. In this connection, it was suggested that such joint control and management were in direct violation of article IX, sec-

592

tion 7, of the Constitution of Pennsylvania, forbidding any incorporated district to become a stockholder or interested in a corporation, or to appropriate money to any corporation. There was no such undertaking in this case, and while joint control and management between the school board and the Peoples Natural Gas Company would be unlawful and not permissible, we see no reason why the township cannot accept a donation and assistance in the erection of its buildings both from the Peoples Natural Gas Company and from the citizens residing in the district.

It is further contended that the amount of land proposed to be condemned is in excess of any needed for school purposes and is not reasonably necessary. This contention is not supported by the evidence nor the law. The question of the necessity for a new school building and its location (and incidentally the size and location of the grounds adjacent thereto) is a matter within the sound discretion of the school board; and the courts will not interfere with the decision of the board on such matters where there is no abuse of discretion: Gilfillan et al. *v.* Fife, 266 Pa. 171. We do not deem it necessary to discuss any of the other matters raised by the objections to the petition for condemnation.

### Conclusions of law.

1. The School District of Wayne Township has not, by its resolution or vote, signified a desire to erect a new school building or to purchase and condemn the land necessary therefor.

2. The petition for the appointment of viewers to assess damages for the taking of the ground or lot necessary for school purposes is not founded upon proper action and proper resolutions of the school board and is, therefore, illegal and void.

### Order.

And now, July 22, 1928, after due consideration of the foregoing case, it is ordered and directed that the petition for the appointment of viewers to estimate and determine the damages sustained by the owners by reason of the taking of said land by the said school district is hereby quashed and dismissed, at the cost of the petitioner, the School District of Wayne Township.

From S. M. Williamson, Waynesburg, Pa.