## Madeira's Land Condemnation.

Argued January 29, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Oliver S. Schaeffer*, with him *William E. Sharman* and *Wilson S. Rothermel*, for appellants.—The Act of June 14, 1887, P. L. 383, must be strictly construed; apparently it permits the taking by eminent domain of public lands, easements and other like property, and not private property: Rees's App., 12 Atl. 427; Crescent Pipe Line Co.'s Petition, 56 Pa. Superior Ct. 201; Packer v. R. R., 19 Pa. 211; Mercer Co. v. R. R., 27 Pa. 389; Lazarus v. Morris, 212 Pa. 128; Woods v. Gas Co., 204 Pa. 606; Com. v. Am. Car & Foundry Co., 203 Pa. 302.

To entitle the Agricultural & Horticultural Association of Berks County to exercise the alleged right of eminent domain, it must show a strict compliance with the statute; it must not be conducted for profit and all proceeds derived from its business must be applied to the purpose declared in its charter: Crescent Pipe Line Co.'s Petition, 56 Pa. Superior Ct. 201; Pioneer Coal Co. v. R. R., 272 Pa. 43.

A county fair as conducted by the Agricultural & Horticultural Association of Berks County is not within the purview of the provisions of the Act of June 14, 1887, P. L. 383: Warren Academy of Sciences, 13 Pa. Dist. R. 597; Art & Crafts Guild, 20 Pa. Dist. R. 584; Market Co. v. R. R., 142 Pa. 580.

*Joseph R. Dickinson*, with him *Charles K. Derr*, for appellee.—The Act of 1887, P. L. 383, confers on corporations created under its provisions the right of eminent domain and the condemnation of private property for its corporate purposes: Com. v. Slifer, 53 Pa. 71; Com. v. Marshall, 69 Pa. 328; Mahon v. Coal Co., 274

Pa. 489; Rees's App., 12 Atl. 427; Com. v. Fraim, 16 Pa. 163; Bradbury v. Wagenhorst, 54 Pa. 180; Phila. v. Ry., 102 Pa. 190; Eshleman's App., 74 Pa. 42; West-field Boro. v. Tioga Co., 150 Pa. 152; Ritter v. Wray, 45 Pa. Superior Ct. 440.

OPINION BY MR. JUSTICE SCHAFFER, March 18, 1929:

This is an appeal by landowners from an order of the court below dismissing their exceptions to a condemnation bond covering the appropriation of their lands by the Agricultural and Horticultural Association of Berks County under its assumed power of eminent domain. Appellants deny that the association possesses such power and assert that under the Act of Assembly through which its franchise is derived the only lands and property which it can condemn are *public* lands and property, not those of private owners.

Appellee was incorporated under the Act of June 14, 1887, P. L. 383, entitled "An act to provide for the incorporation and regulation of companies, not for profit, organized for the encouragement of the arts and sciences and of agriculture and horticulture, and to confer upon such companies the right of eminent domain." There is a preamble to the act which recites that "Expositions of artistic, mechanical, agricultural and horticultural products have proved of great benefit in the education of the people, and have become a prime and general necessity as a popular means of disseminating knowledge, and, to accomplish such purpose, it is necessary to confer upon such associations a permanent organization and power to acquire, hold and improve permanent locations for such expositions by the exercise of the power of eminent domain." In conferring powers on corporations to be created in pursuance of its provisions, the act gives them the right "To hold, purchase, maintain, lease, mortgage, sell and transfer real and personal property as the purposes of the corporation may require, and the right also to enter upon, take and occupy such *public* lands, ease-

68

ments and other property, as may be required, from time to time, for the purposes of its incorporation." The fourth section goes on to provide, "The taking of such *public* lands for the erection and maintenance thereon of buildings, or other structures, for the public exposition of manufactured articles, agricultural products, minerals and all articles pertaining to the arts and sciences, and providing public instruction in the arts and sciences, by the exercise of the right of eminent domain, is hereby declared to be taking of said land for public use. Any corporation chartered under this act for the purpose herein mentioned, or any corporation heretofore chartered for like purpose and accepting the provisions of this act, as hereinafter prescribed, shall have the right of eminent domain for the purpose of appropriating to its use such *public* lands, easements and other property, as may be necessary for the purpose of its incorporation; such right however shall not be exercised as to any burying-ground, passenger railroad stationhouse, nor as to any street, alley, highway, wharf-land ing, or other property of any incorporated city, town or borough, without the consent of its councils first had to such appropriation, by ordinance duly passed and approved, nor shall such right in any event be exercised as to any tidewater wharf, nor as to that part of any other *public* wharf, or river landing, which has been theretofore graded and paved by the municipality, and if not so graded and paved, such wharf or river landing may be appropriated as herein provided, any limitation of use thereof by the municipality by donation, dedication, appropriation, statute or otherwise, to the contrary notwithstanding."

We think the suggestion may be hazarded that if the intent of the lawmakers was to confer the right of eminent domain upon corporations to be created under this statute to condemn the private property of individuals, it could not have been much more awkwardly expressed. Had such been the purpose, it was very easy to say so.

The power conferred in the fourth paragraph of the first section is "the right also to enter upon, take and occupy such *public* lands, easements and other property." We doubt whether it would even be argued, if the phrase stopped with the word "easements," and read "public lands and easements," that any but public easements could be appropriated; and it would seem, if the noun "property" were closer to the adjective "public,"— if it read "public lands and property" or "public lands, property and easements,"—a contention that the meaning was other than "public property" could not be successfully maintained.

When the whole act is viewed, its dominant purpose is seen to cover the appropriation of things of a public or quasi-public nature. Thus it provides, in section 4, that "The taking of such *public* lands for the erection and maintenance thereon of buildings, or other structures, ......by the exercise of the right of eminent domain, is hereby declared to be taking of said land for public use." Nothing is said in this connection about private lands or private property. Further, that any corporation chartered under the statute "shall have the right of eminent domain for the purpose of appropriating to its use such *public* lands, easements and other property, as may be necessary for the purpose of its incorporation," with the proviso that "such right however shall not be exercised as to any burying-ground, passenger railroad station-house, nor as to any street, alley, highway, wharf-landing or other property, of any incorporated city, town or borough, without the consent of its councils first had to such appropriation......nor shall such right in any event be exercised as to any tide-water wharf, nor as to that part of *any other public* wharf, or river landing, which has been theretofore graded and paved by the municipality," etc. All of these excepted kinds of property are either public or quasi-public, certainly so in popular understanding, as contra-distinguished from that which is regarded as private property.

From a careful reading of the statute we are unable to reach the conclusion that it confers in clear and unmistakable terms the power to condemn and appropriate private property,—in the present instance appellants' privately owned lands.

In Woods v. Greensboro Natural Gas Co., 204 Pa. 606, where the statute under which the defendant was incorporated gave to it "the right of eminent domain for the laying of pipe lines for the transportation and distribution of natural gas" and in which it was held that the company under its grant of power did not have the right to construct and maintain on its pipe-line right of way a telegraph or telephone line, it was said: "All grants of power by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other. An act of this sort deserves no favor; to construe it liberally would be sinning against the rights of property; ......the right of eminent domain......will not be presumed to exist in a corporation, unless by express legislative grant." We quite recently (1927) in Solar Elec. Co.'s App., 290 Pa. 156, reviewed the authorities dealing with the question now before us and again reaffirmed the principle already mentioned, which in our opinion controls the instant case, that the power of eminent domain "exists in municipal or other corporations only as *direct* authority from the government by Act of Assembly may be shown therefor. Acts of Assembly granting this right must be construed strictly. The language of the act should be clear and unmistakable, and questions of doubt should be resolved against the existence of this right; unless the right clearly appears it should be denied." It cannot be said that the power is clearly conferred on appellee and it must be held that whether it is so conferred is at least doubtful. This being so, the long-established principle to which we have adverted should be applied and our conclusion must be

that appellee does not possess the power to appropriate appellants' lands.

The order of the court below overruling the exceptions filed to the approval of the condemnation bond is set aside, appellants' first exception is sustained and it is ordered that the said condemnation bond be disapproved; costs to be paid by appellee.